## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| BOOKER T. HUFFMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:19-cv-00050-RWS-RSP |
| ACTIVISION PUBLISHING, INC., | § | |
| ACTIVISION BLIZZARD, INC., and | § | |
| MAJOR LEAGUE GAMING CORP., | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Booker T. Huffman ("Booker T.") sued Defendants Activision Publishing, Inc., Activision Blizzard, Inc., and Major League Gaming Corp., alleging one count of copyright infringement. (Dkt. No. 34).[1] Defendants responded with two motions: (1) Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("12(b)(6) Motion") (Dkt. No. 14) and (2) Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, to Transfer pursuant to 28 U.S.C. § 1404(a) ("Venue Motion") (Dkt. No. 15).[2] For the reasons stated herein, the both motions should be denied.

## I.    BACKGROUND ALLEGATIONS

Booker T. has "led a blessed life." He gained acclaim for winning the "world champion title" in the World Championship Wrestling circuit five times and is often ranked among the "top five heavyweight wrestlers in history." He would sometimes use an in-ring persona named G. I.

---

[1] Booker T filed an amended complaint on July 18, 2019, replacing the original complaint, filed on February 2, 2019.

[2] Booker T responded to the 12(b)(6) Motion (Dkt. No. 23), to which Defendants filed a reply. (Dkt. No. 25). Similarly, Booker T responded to the Venue Motion (Dkt. No. 24), to which Defendants filed a reply. (Dkt. No. 26).

Bro. In 2015, Booker T, with the help of Travis Huffman,[3] an independent contractor, created cartoon versions of G. I. Bro, as well as comic books based on the character (collectively, "G. I. Bro works").[4] He registered the works with the United States Copyright Office.[5] Further, he promoted his character and comic books by appearing at comic book events, dressed as G. I. Bro. (Dkt. No. 34 at 4–5). While Booker T lives in the Southern District of Texas, Travis Huffman lives and works in the Eastern District of Texas. (Dkt. No. 24 at 7).

Defendants are all involved in the video game industry. Activision Publishing and Activision Blizzard allege their principal place of business is in the Central District of California, with their design and engineering teams in Southern California (Dkt. No. 15 at 13), while Major League Gaming's principal place of business is in the Southern District of New York. (*Id*. at 3).

Booker T claims that Defendants published a series of multiplayer, first-person shooter games under the general title, "*Call of Duty*." In 2018, *Call of Duty: Black Ops 4*, a "prequel" to the videogame *Call of Duty Black Ops III* was released. In *Black Ops III*, one of the specialist characters was David "Prophet" Wilkes, who had replaced 90% of his body with cybernetics to enhance his fighting ability. For the *Black Ops 4* "prequel," Prophet was depicted as he was before he remade himself. Booker T alleges that Prophet is a copy of his persona, G. I. Bro. As a result, Booker T brought an action for copyright infringement against Defendants. (Dkt. No. 34 at 2–3).

## II.   APPLICABLE LAW

### a.   Rule 12(b)(3)

---

[3] While Booker T and Travis share the same last name, they are unrelated.
[4] Booker T authored four G. I. Bro drawings, titled *G. I. Bro Artwork*, as well as comic books titled *G. I. Bro and the Dragon of Death Intro* and *G. I. Bro and the Dragon of Death*. (Dkt. No. 34 at 5).
[5] The Copyright Office issued a Certificate of Registration for the longer version of the comic book on January 8, 2019 and for the *Artwork* cartoons and *Intro* comic book on February 7, 2019. (*Id*. at 5–6).

A party may move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3). "Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 120–21 (E.D. Tex. 2009) (citations omitted). A plaintiff may carry its burden by presenting facts, taken as true, that establish venue. *Id.* The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Id.* If venue is improper, the Court must dismiss it, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### b.  Rule 12(b)(6)

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint states a sufficient claim if it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (punctuation in original). When considering a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded facts in a plaintiff's complaint as true and views those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 545).

## III.   ANALYSIS

### a.  12(b)(6) Motion

To prove copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) actionable copying. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340 (5th Cir. 1994)). Defendants, in the 12(b)(6) Motion, argue that Booker T has not properly alleged either.

Defendants specifically argue that Booker T did not allege that two of his works—*G. I. Bro Artwork* and the *G. I. Bro and the Dragon of Death Preview*—were registered with the Copyright Office, meaning he did not properly show ownership of a valid copyright. (*See* Dkt. No. 14 at 9). Further, Defendants argue Booker T did not properly allege copying since he did show (1) access and substantial similarity or (2) striking similarity. (*Id*. at 2). The Court disagrees, finding that Booker T properly stated a claim for copyright infringement in his amended complaint.

### i.  Ownership of Valid Copyright

Defendants argue that Booker T improperly filed this action since he did not allege that he filed this action after "the Register of the United States Copyright Office 'ha[d] registered a copyright' in [the asserted G. I. Bro] works," which Defendants argue the Supreme Court recently required in *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). (*Id*. at 9 (quoting *Fourth Estate*, 139 S. Ct. at 892)).

4

Booker T first filed this action on February 12, 2019. (*See* Dkt. No. 1). On July 18, 2019,

Booker T filed an amended complaint. In it, Booker T alleged that he had received a certificate of

registration for all three G. I. Bro works. Relevantly, his amended complaint stated:

> 16. Booker T. has registered *G. I. Bro Artwork 1* with the United States Copyright Office.
> The Copyright Office has issued Certificate of Registration No. VAu 1-355-086 for this
> work, dated February 7, 2019.
>
> 17. Booker T. has registered *G. I. Bro and the Dragon of Death Intro* with the United States
> Copyright Office. The Copyright Office has issued Certificate of Registration No. TX 8-
> 701-857 for this work, dated February 7, 2019. *G. I. Bro and the Dragon of Death Intro* is
> based on the character G. I. Bro, first drawn in *G. I. Bro Artwork*, and includes two of the
> drawings from *G. I. Bro Artwork*; to that extent it is a derivative of *G. I. Bro Artwork*.
>
> 18. Booker T. has registered *G. I. Bro and the Dragon of Death* with the United States
> Copyright Office. The Copyright Office has issued Certificate of Registration No. TX 8-
> 668-892 for this work, dated January 8, 2019. *G. I. Bro and the Dragon of Death* is a
> derivative of *G. I. Bro Artwork and G. I. Bro and the Dragon of Death Intro*. *G. I. Bro and
> the Dragon of Death* is based on the character G. I. Bro, first drawn in *G. I. Bro Artwork,
> and* includes one of the drawings from *G. I. Bro Artwork*; and to that extent it is also a
> derivative of *G. I. Bro Artwork*. Booker T. has also made a supplementary registration
> clarifying that *G. I. Bro and the Dragon of Death* is a derivative of *G. I. Bro Artwork and
> G. I. Bro and the Dragon of Death Intro*. The Copyright Office has issued Certificate of
> Registration No. TX 8-721-574 for this supplementary registration, dated February 8, 2019.

(Dkt. No. 34 at 5–6).

At the Rule 12(b)(6) stage, a court accepts all well-pleaded facts as true. *See Bowlby*, 681

F.3d at 219. Therefore, the Court, for the present motion, accepts the above statements as true.

They state that the Copyright Office issued a certificate of registration for all G. I. Bro works

before this case was filed on February 12, 2019. A copyright certificate of registration constitutes

"prima facie evidence of the validity of the copyright . . . ." 17 U.S.C. § 410(c). Since Booker T

filed this action after the Copyright Office registered a copyright for the asserted G. I. Bro works,

he properly alleged ownership of a valid copyright for all the asserted works in this action.[6]

### ii. Actionable Copying

---

[6] Since the issue is not reached, the Court does opine as to the *Fourth Estate*'s applicability to the present action.

Defendants also argue that Booker T did not sufficiently allege copying through circumstantial evidence. Copying can be proven by direct or circumstantial evidence. *Bridgmon*, 325 F.3d at 576 (citations omitted). As direct evidence of copying is rarely available, copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) "substantial similarity" between the copyrighted work and the allegedly-infringing work. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (citing *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)); *see also Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001) (citing *Eng'g Dynamics,* 26 F.3d at 1340).

Alternatively, a plaintiff may circumstantially establish "copying without any proof of access when 'the similarity between plaintiff's and defendant's works is [strikingly similar] such that the trier of fact may be permitted to infer copying on that basis alone.'" *Positive Black Talk*, 394 F.3d at 371 n.10 (quoting 4 NIMMER § 13.02[B], at 13–26 (footnotes omitted)); *see also Selle v. Gibb,* 741 F.2d 896, 904 (7th Cir. 1984) (finding that the "judicially formulated definition" of striking similarity means the similarities "can only be explained by copying, rather than by coincidence, independent creation, or prior common source.") (citations omitted).

Defendants argue that Booker T failed to properly allege either method described above of proving copying circumstantially since Booker T did not make a showing of access or striking similarity. Booker T counters that his complaint adequately alleges striking similarity. In the Fifth Circuit, similarity is a question typically left to the fact finder unless the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find similarity of ideas and expression. *See Peel*, 238 F.3d at 395 (discussing the test in the context of summary judgment). If not, the fact finder determines whether

a layman who is shown a side-by-side comparison between the original and the copy would conclude that the two works are sufficiently similar. *Id*. Booker T argues that the side-by-side comparison of G. I. Bro and Prophet in his complaint "would allow a reasonably jury to find striking similarity." (Dkt. No. 23 at 6).

Viewing the evidence and drawing inferences in a manner most favorable to Booker T, this Court finds that a reasonable juror could find similarity between the pictures in the complaint. Further, the Court finds that the complaint gives fair notice of what claims and grounds it rests upon such that Booker T has made a sufficient allegation of copying.

In conclusion, Booker T sufficiently alleged ownership of valid copyrights for the asserted works and actionable copying through a showing of striking similarity. Therefore, he properly stated a claim for copyright infringement in his amended complaint.

### b.   Venue Motion

Defendants, in the Transfer Motion, argue that venue for this action is improper in the Eastern District of Texas under the exclusive copyright-venue statute, 28 U.S.C. § 1400(a). Further, they argue that even if venue were proper in this District, transfer is warranted under 28 U.S.C. § 1404(a) to the Central District of California for convenience reasons.

### i.   Improper Venue

Defendants first move to dismiss this action for "improper venue" under Rule 12(b)(3). A copyright infringement action can be filed "in [any] district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Defendants argue that neither they nor their agents "reside" or "may be found" in this District, making venue improper. *Id*. Therefore, this Court should "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Defendants first argue that the term "resides" in § 1400(a) should be narrowed to refer "only to the State of incorporation" in line with the Supreme Court's holding in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC,* 137 S. Ct. 1514 (2017), which addressed a similar term in § 1400(b), the patent-venue statute. (Dkt. No. 15 at 5–6 (quoting *TC Heartland*, 137 S. Ct. at 1520)). Yet, Justice Thomas, the author of *TC Heartland*, began his opinion by stating "[t]he question presented in this case is where proper venue lies for a **patent** infringement lawsuit brought against a domestic corporation." *Id*. at 1516 (emphasis added). The opinion goes on to reference § 1400(b) dozens of times, without mentioning § 1400(a) even once. Other courts have held that *TC Heartland* is limited to § 1400(b). *E.g., Ford Motor Co. v. Launch Tech Co.*, No. 17-12906, 2018 WL 1089276, at *10 (E.D. Mich. Feb. 26, 2018). Thus, this Court does not find that *TC Heartland*'s narrow holding was meant to encompass § 1400(a), the copyright-venue statute.

Defendants next argue that the term "may be found" in § 1400(a) should turn on a defendant's physical presence. (*Id*. at 6). They reject the Fifth Circuit's longstanding understanding of this term as analogous to where a party is subject to personal jurisdiction.[7] *Time, Inc. v. Manning*, 366 F.2d 690, 697-98 (5th Cir. 1966). They argue that the physical presence requirement was how the term was understood when the Copyright Act was enacted in 1909, as confirmed by the Supreme Court in *People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79 (1918) and that "courts, including those in the Fifth Circuit, have strayed from [*People's Tobacco*]'s holding, conflating § 1400(a) . . . with the personal jurisdiction inquiry." (*Id*. at 7–8). Finally, Defendants argue that post-*TC Heartland*, such "reasoning cannot survive today." (*Id*. at 8).

Yet post-*TC Heartland*, a sister court in this District relied on *Time* when it found that the term "may be found" is still analogous to where a party is subject to personal jurisdiction. *Andra*

---

[7] Other Circuits similarly understand the term "may be found" in § 1400(a) to mean where a defendant is subject to personal jurisdiction. *E.g., Palmer v. Braun*, 376 F.3d 1254, 1259–60 (11th Cir. 2004).

*Grp., LP v. BareWeb, Inc.*, No. 4:17-CV-00815, 2018 WL 2848985, at *7 (E.D. Tex. June 11, 2018). Defendants tried to distinguish that case from the situation here, arguing that such reliance was "misplaced." This Court disagrees. The issue was properly presented before Judge Mazzant. He cited a multitude of cases, both within the Fifth Circuit and throughout the country, that defined the term "may be found" as it has traditionally been understood. He further analyzed the issue thoroughly, including as it specifically applied to *TC Heartland*. Finally, he concluded that the term should continue to be analogous to where a party is subject to personal jurisdiction. *Id.*

This Court, after considering the briefing and independently analyzing the issue, agrees. In *TC Heartland*, the Supreme Court found it was improper to use § 1391(a) to help define "reside" in § 1400(b). 137 S. Ct. at 1519–20. Unlike that situation, the "may be found" term in § 1400(a) does not rely on other statutes for its meaning. Instead, courts across the country have established its meaning through many rulings over the decades. *Tayama v. Riom Corp.*, No. 2:11-CV-167-J, 2012 WL 556007, at *2 (N.D. Tex. Feb. 21, 2012) (collecting cases). Thus, this Court finds that the term "may be found" in § 1400(a), the copyright-venue statute, continues to be analogous to where a party is subject to personal jurisdiction post-*TC Heartland*.

In Booker T's complaint, he alleges that Defendants are subject to personal jurisdiction in the Eastern District of Texas. (Dkt. No. 34 at 3–4). These allegations, taken as true, *see ATEN Int'l*, 261 F.R.D. at 120–21, establish that Defendants "may be found" in this District. Accordingly, venue is proper in this District under § 1400(a).

### ii.   Inconvenient Venue

Defendants also argue that even if venue is proper, the Central District of California would be a more convenient forum.[8] A district court may, for the convenience of parties and witnesses, transfer a civil action to another district where it might have been brought. 28 U.S.C. § 1404(a).

The first step in a Court's transfer analysis is deciding whether "the claim could have been filed" in the transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). That step is not disputed here. (Dkt. No. 24 at 6). Once that threshold is met, the movant must show that the transferee forum is clearly more convenient than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

The Fifth Circuit uses several private and public interest factors to determine if this standard is met. *Id*. The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id*.

### 1.   Private Factors

Both sides make a case that the first private factor, the relative ease of access to sources of proof, favors them. Defendants argue that many of their witnesses and documents are in the Central District of California. Booker T counters that he is based in Houston, which is significantly closer to the Eastern District of Texas than the Central District of California. Further, his key witness,

---

[8] Defendants also ask the Court to consider Southern District of Texas as a potential transferee forum. Since they indicate that their preferred destination is the Central District of California, only that forum will be addressed.

Travis Huffman, is based in this District. He also alleges that another court had previously found that Defendants had a significant presence in and around the District. (*Id*. at 12 (citing *Paltalk Holdings, Inc. v. Sony Comput. Entm't Am., Inc.*, No. 2:09-CV-274-DF-CE, 2010 U.S. Dist. LEXIS 92229 (E.D. Tex. Sep. 3, 2010))). Finally, he argues that Major League Gaming as well as many of its "witnesses and documents relevant to its infringing activities" are based in New York. (*Id*. at 8). New York is significantly closer to this District than to the Central District of California. With potential witnesses and documents spread throughout the country, including in this District, the first private factor is neutral.

The second and third private factors—the availability of compulsory process to secure the attendance of witnesses and the cost of attendance for willing witnesses—are also neutral. This District is significantly closer for Booker T than the Central District of California. Potential witnesses reside in both districts. This District is significantly closer to New York, where some potential Major League Gaming witnesses reside and work. Lastly, while Defendants conclude that the Central District of California is a shorter average distance for witnesses than the Eastern District of Texas, it is unclear how they came to such a conclusion without knowing the number of witnesses. (Dkt. No. 15 at 14). Viewing the facts in the light most favorable to the Booker T, it is entirely possible that this District has the shorter average distance for witnesses to travel.

The fourth and final private factor—practical problems that make trial of a case easy, expeditious, and inexpensive—weighs against transfer. Defendants argue that Los Angeles, its preferred forum, is home to a major international airport, which they argue would reduce the cost and time associated with travel. (*Id*.). Defendants fail to consider that while the Shreveport airport is not in this District, it is only 35 miles from the Marshall courthouse, and is actually easier to reach. Therefore, this factor is neutral.

### 2.   Public Factors

Both sides argue that the administrative difficulties flowing from court congestion, the first public factor supports their side. Defendants argue that the average time from filing to disposition—8.9 months in the Eastern District of Texas and 5.1 months in the Central District of California—is quicker for civil actions in their preferred district. Booker T counters that the average time from filing to trial—19 months in the Eastern District of Texas and 21.5 months in the Central District of California— is the better metric to use. (Dkt. No. 15-5 at 3–5). This Court agrees. Accordingly, this factor weighs against transfer.

The second public factor is the local interest in having localized interests decided at home. Both districts have an interest since citizens from both districts have worked and conducted business in each community respectively. Travis Huffman, the independent contractor who helped Booker T create the G. I. Bro works, is based in this District. On the other hand, Activision Publishing and Activision Blizzard are headquartered in the Central District of California and employ many individuals there. Thus, this factor is neutral.

The last two public factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws—are neutral since both districts would apply federal law.

Defendants have not met their burden of showing the transferee forum is clearly more convenient than the Eastern District of Texas, the venue chosen by Booker T.

### IV.    CONCLUSION

After consideration, the Court recommends that both Defendants' Motion to Dismiss for Failure to State a Claim and the Motion to Dismiss for Improper Venue, or in the alternative, Transfer be denied.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).   Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 27th day of November, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE