# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BOOKER T. HUFFMAN,<br><br>      Plaintiff,<br><br>  v.<br><br>ACTIVISION PUBLISHING, INC.,<br>ACTIVISION BLIZZARD, INC., MAJOR<br>LEAGUE GAMING CORP., and<br>TREYARCH CORPORATION,<br><br>      Defendants. | Civil Action No. 2:19-cv-00050-RWS-RSP |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO STANDING AND NO COPYRIGHT INFRINGEMENT

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ............................................................................................................4

        A.      Statement of Undisputed Material Facts.............................................................4

                1.      World Wrestling Entertainment's Ownership of G.I. Bro.........................4

                2.      The G.I. Bro Comics and the Arroza Poster ..............................................6

                        a.      Creation of the Arroza Poster ........................................................6

                        b.      Distribution of the Arroza Poster ...................................................7

                3.      The Prophet Character and Prophet/Romeo Image ....................................7

                        a.      The Genesis of Prophet for *Call of Duty: Black Ops 4*...................7

                        b.      The Creation of the Prophet/Romeo Image ....................................9

                4.      The Individuals Involved in Creating the Prophet/Romeo Image
                        Had Never Seen the Arroza Poster or Heard of G.I. Bro...........................10

                5.      There Is No Evidence That Defendants or Their Contractors Had a
                        Reasonable Possibility of Accessing the Arroza Poster. ..........................10

                6.      Plaintiff Conceded that the Prophet/Romeo Image Could Have
                        Been Independently Created.......................................................................11

III.    LEGAL STANDARDS .................................................................................................11

        A.      Summary Judgment ...........................................................................................11

        B.      Standing .............................................................................................................12

        C.      Factual Copying.................................................................................................12

        D.      Independent Creation Is a Complete Defense....................................................13

IV.     DISCUSSION ...............................................................................................................14

        A.      Plaintiff Lacks Standing to Bring a Copyright Infringement Suit Because
                WWE, Not Plaintiff, Is the Copyright Owner....................................................14

        B.      There Is No Evidence to Create a Genuine Dispute That Defendants
                Accessed the Arroza Poster. ..............................................................................16

i

1.  Plaintiff Has Produced No Evidence That Defendants Ever Saw the Arroza Poster...................................................................................16

2.  Mere Online Posting of the Arroza Poster Is Insufficient to Establish Access........................................................................................19

C.  Plaintiff Cannot Make a Striking Similarity Argument and Therefore Cannot Overcome His Lack of Evidence of Access..............................21

D.  Plaintiff Has No Evidence to Create a Genuine Dispute Regarding Defendants' Independent Creation of the Prophet/Romeo Image. .......27

1.  The Prophet/Romeo Image Was Independently Created...........................27

2.  In Similar Circumstances, Courts Grant Summary Judgment. .................28

V.  CONCLUSION.............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
166 F.3d 772 (5th Cir. 1999) ...............................................................14

*Allen v. Rapides Parish Sch. Bd.*,
204 F.3d 619 (5th Cir. 2000) ...............................................................12

*Armour v. Knowles*,
512 F.3d 147 (5th Cir. 2007) ...........................................................12, 13

*Batiste v. Lewis*,
-- F.3d --, No. 19-30400, 2020 WL 5640589 (5th Cir. Sept. 22, 2020)............................17, 22

*Building Graphics, Inc. v. Lennar Corp.*,
708 F.3d 573 (4th Cir. 2013) ...............................................................19

*Cabell v. Sony Pictures Entm't, Inc.*,
714 F. Supp. 2d 452 (S.D.N.Y. 2010).......................................................25

*Cain v. Hallmark Cards, Inc.*,
No. 3:15-00351-JWD-EWD, 2016 WL 3189231 (M.D. La. June 6, 2016) ............................19

*Calhoun v. Lillenas Publishing*,
298 F.3d 1228 (11th Cir. 2002) ...............................................................29

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................11

*Corwin v. Walt Disney Co.*,
475 F.3d 1239 (11th Cir. 2007) .......................................................29, 30

*Design Basics, LLC v. Lexington Homes, Inc.*,
858 F.3d 1093 (7th Cir. 2017) ...............................................................19

*Dimmie v. Carey*,
88 F. Supp. 2d 142 (S.D.N.Y 2000).......................................................22

*Duncan v. Wood*,
54 F. App'x 591 (5th Cir. 2002) (per curiam) ...............................................17, 18

*Ferguson v. Nat'l Broad. Co.*,
584 F.2d 111 (5th Cir. 1978) .......................................................13, 17, 21

*Foote v. Franklin Mint*,
    No. CA 3:97-CV-1214-R, 1998 WL 970179 (N.D. Tex. Oct. 28, 1998) ...............................14

*Gaste v. Kaiserman*,
    863 F.2d 1061 (2d Cir. 1988)........................................................................................13, 21

*Guzman v. Hacienda Records & Recording Studios, Inc.*,
    808 F.3d 1031 (5th Cir. 2015) ...............................................................................................22

*Horizon Comics Productions Inc. v. Marvel Entertainment, LLC*,
    No. 16-CV-2499 (JPO), 2019 WL 3080847 (S.D.N.Y. July 15, 2019)........................... *passim*

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................................12

*Miller v. Universal City Studios, Inc.*,
    650 F.2d 1365 (5th Cir. 1981) ................................................................................................14

*Mills v. Ayala*,
    No. 08-cv-5168, 2010 WL 420556 (E.D. La. Jan. 29, 2010) ..................................................20

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
    783 F.3d 527 (5th Cir. 2015) ..................................................................................................25

*Peel & Co. v. The Rug Market*,
    238 F.3d 391 (5th Cir. 2001) ..................................................................................................13

*Sanchez v. Hacienda Records & Recording Studio, Inc.*,
    No. H-11-3855, 2015 WL 1219651 (S.D. Tex. Mar. 17, 2015) ...............................................14

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) ..................................................................................................14

*Straus v. DVC Worldwide, Inc.*,
    484 F. Supp. 2d 620 (S.D. Tex. 2007) ....................................................................................23

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*,
    778 F.3d 502 (5th Cir. 2015) ..................................................................................................12

*Vargas v. Transeau*,
    514 F. Supp. 2d 439 (S.D.N.Y. 2007), *aff'd sub nom. Vargas v. Pfizer, Inc.*,
    352 F. App'x 458 (2d Cir. 2009) .............................................................................................21

*Walker v. Viacom Int'l Inc.*,
    No. C 06-4931 SI, 2008 WL 2050964 (N.D. Cal. May 13, 2008)............................................23

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................................12

iv

*Watt v. Butler*,
    457 F. App'x 856 (11th Cir. 2012) ...................................................................27, 28

**Statutes**

17 U.S.C. § 201(d) ..........................................................................................................14

17 U.S.C. § 501(b) ..........................................................................................................14

**Rules**

Fed. R. Civ. P. 56...............................................................................................................1

Fed. R. Civ. P. 56(a) ........................................................................................................11

L.R. Civ. 56........................................................................................................................1

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Defendants Activision

Publishing, Inc., Activision Blizzard, Inc., Major League Gaming Corp., and Treyarch

Corporation (together, "Defendants") will and do respectfully move for summary judgment with

respect to the first count in Plaintiff Booker T. Huffman's ("Plaintiff") Second Amended

Complaint ("SAC").  No material facts are genuinely in dispute, and summary judgment should

be entered for Defendants.

This motion is based upon this Motion, the Memorandum of Points and Authorities in

support thereof, the declarations filed concurrently herewith and the exhibits thereto, all

pleadings and papers on file in this action, the briefing filed herein and in opposition thereto, and

upon such other argument and evidence as may properly be presented to the Court.

## ISSUES TO BE DECIDED

The issues to be decided are whether Plaintiff has standing to sue on the copyrights he

claims were infringed, and, if so, whether Plaintiff has evidence sufficient to create a genuine

dispute of material fact whether Defendants infringed any copyright of which he is the owner.

## I.       INTRODUCTION

> Q. I'm saying what personal knowledge do you have that the
> defendants stole your image?  Do you have any?
>
> A. I have no evidence of that personally.  No knowledge of it.

Ex. 7 (Plaintiff Dep. Tr. 225:11-15).[1]

---

[1] Submitted concurrently in support of this motion are the declarations of Murad Ainuddin ("Ainuddin Decl."), Henrik Bolle ("Bolle Decl."), Daniel Bunting ("Bunting Decl."), Alan Hunter ("Hunter Decl."), Evan Rogers ("Rogers Decl."), Carolyn Wang ("Wang Decl."), and Joseph C. Gratz ("Gratz Decl.").  All exhibits are to the Gratz Declaration unless otherwise indicated.

1

Plaintiff has no legal standing, and his case has no factual basis.  He does not own the copyright in question, and he has no evidence, only speculation, to show infringement.

Plaintiff's claim alleges infringement of a single depiction of a character based on his professional wrestling persona "G.I. Bro" on a poster created by Erwin Arroza.  Ex. 2 (hereinafter the "Arroza Poster").  But Plaintiff does not own the rights to G.I. Bro, and the copyrights to the Arroza Poster indisputably belong to Worldwide Wrestling Entertainment ("WWE").  It is undisputed that Plaintiff transferred all rights to G.I. Bro to WWE, including the right to exploit the G.I. Bro character in all forms of media, including posters and comic books. He thus is not the legal owner of any G.I. Bro copyrights, including the Arroza Poster, and does not have standing.

As for infringement, Plaintiff's case is equally baseless.  He alleges that Defendants infringed the Arroza Poster when they created one depiction of a character named David "Prophet" Wilkes from the video game *Call of Duty: Black Ops 4,* a depiction based on a photoshoot with actor William Romeo dressed as the game character Prophet.  Ex. 3 (hereinafter the "Prophet/Romeo Image").  Plaintiff does not quarrel with any depiction of Prophet in the gameplay itself.  Plaintiff only alleges that a single, little-used marketing image of Prophet, the Prophet/Romeo Image, infringes the Arroza Poster.  But Plaintiff cannot present a single document or shred of testimony that anyone involved in creating that image was aware of the obscure Arroza Poster, let alone that it was used in creating the Prophet/Romeo Image.

There is good reason for Plaintiff's inability to make out a case:  it is undisputed and thoroughly documented that Defendants worked with third-party contractors to independently create the Prophet/Romeo Image.  Defendants started with the Prophet character from *Call of Duty: Black Ops III*, which was released in 2015, prior to the creation of the Arroza Poster.  In

2017, preparing for a 2018 release of *Black Ops 4*, Defendants created concept art for the ten

characters who would be featured in *Black Ops 4*, including an updated depiction of Prophet.

Defendants then worked with an ad agency to hire live models to bring the game

characters to life.  William Romeo was selected among several options for Prophet.  In 2018,

Defendants with their ad agency conducted several photoshoots with these models, for which the

models were paid, including a photoshoot with Mr. Romeo dressed in wardrobe replicating

Prophet's in-game depiction.  The photoshoot resulted in thousands of photographs of Mr.

Romeo in a wide range of poses.  Defendants' ad agency then added graphical elements to the

photographs to create several options of potential images depicting the lineup of *Black Ops 4*

characters.  Among these several options, Defendants ultimately selected a lineup of characters

for its secondary key art that included the Prophet/Romeo Image.  This process is supported by

contemporaneous documents and sworn testimony from every stage of development of the

Prophet character and the Prophet/Romeo Image.[2]

Independent creation is a complete defense against claims of infringement.  In the face of

this undisputed evidence, Plaintiff offers nothing more than speculation that an unidentified

person at Activision, or possibly another company with whom Activision worked, might have

somehow stumbled across the Arroza Poster, even though only a handful of copies of the poster

were ever sold and less than 500 copies ever printed, and copied it.  Under Plaintiff's baseless

theory, the Prophet/Romeo image was copied from the Arroza Poster, and the photoshoot with

Mr. Romeo and extensive documentation showing the development of the resulting image was

---

[2] For ease of reference, Activision has created a single compendium document (the
"Compendium Document") demonstrating each stage of the development process.  *See* Gratz
Decl. ¶ 2 & Ex. 1.  All images in the Compendium Document are provided as parts of separate
exhibits authenticated by witness declarations.

nothing more than an elaborate (and expensive) ruse by Defendants.

Looking at the Prophet/Romeo Image juxtaposed with the William Romeo photograph shows that the Prophet/Romeo Image was indisputably based on the Romeo photograph:

 

SAC ¶ 8 (Prophet/Romeo Image)          Hunter Decl. Ex. 4 (Romeo Photograph)[3]

Plaintiff's unsupported conjecture does not create a genuine dispute of material fact that Defendants infringed the Arroza Poster.  This Court should grant Defendants' motion for summary judgment.

## II.     BACKGROUND

### A.     Statement of Undisputed Material Facts

#### 1.     World Wrestling Entertainment's Ownership of G.I. Bro

Plaintiff was a professional wrestler.  In the 1990s, Plaintiff adopted the persona of "G.I. Bro" in connection with his professional wrestling performances.  Ex. 6 (Plaintiff Dep. Tr. 35:8-11).  ████████████████████████████████████████████████████████████

████████████████████████████████████████  Ex. 8 (hereinafter "2011 NA,"

---

[3] Full-page versions of these images can be seen in the Compendium Document.  Ex. 1.

Plaintiff_000734 at 750, Preamble, para. 2). ███████████████████████████

███████████████████████████████████████████████[4] Ex. 9

(hereinafter "2017 NA," Plaintiff_000771 at 787, Preamble, para. 2).



WWE is not a party to this lawsuit.

———————————————
[4] ████████████████████████████████████████████████████
████████████████████████████████████████
████████████████
[5] ████████████████████████████████████████████████████
█████████████

### 2.     The G.I. Bro Comics and the Arroza Poster

#### a.      Creation of the Arroza Poster

In 2015, Plaintiff contracted Travis Huffman of Last Sentry Comics to create a comic

book series entitled *G.I. Bro and the Dragon of Death*.  SAC ¶ 15.  The comic books were based

on Plaintiff's G.I. Bro wrestling persona.  *Id.* ¶¶ 14-15 ("He conceived a character like his

wrestling personality who would be a retired special operations soldier . . . .  Travis Huffman and

his employees took Booker T.'s G. I. Bro and created artwork, four cartoon versions of G. I.

Bro.").

Two issues of this comic book were created.  Ex. 6 (Plaintiff Dep. Tr. 58:15-59:1); *see

also* Exs. 4 & 5.  Combined, they sold less than 2,000 copies.  Ex. 10 (Travis Huffman Dep. Tr.

41:19-42:6, 43:7-19).  Plaintiff does not accuse Defendants of copying the comic books.  Ex. 6

(Plaintiff Dep. Tr. 26:17-29:14, 165:9-14).

In 2016, Travis Huffman commissioned Erwin Arroza to create an image of G.I. Bro for

a poster to be distributed at the 2016 Space City Convention in Houston.  Ex. 10 (Travis

Huffman Dep. Tr. 68:16-69:13).  This poster featured G.I. Bro in a black T-shirt and included

Plaintiff's wife, Sharmell Huffman.  Ex. 2 (the Arroza Poster).  Travis Huffman paid Arroza $85

to create this poster.  Ex. 11 (Travis Huffman Dep. Tr. 186:4-187:6).  It is only this poster, the

Arroza Poster, that Plaintiff alleges Defendants infringed.  Ex. 7 (Plaintiff Dep. Tr. 249:18-22,

249:25-250:2).

Plaintiff testified at his deposition that the G.I. Bro comic books themselves were ***not***

copied and that the Prophet/Romeo Image "looks pretty different" from the G.I. Bro character in

the comic books.  Ex. 6 (Plaintiff Dep. Tr. 165:9-18).  He also testified that the in-game Prophet

character "doesn't look like me."  *Id.* 166:17-168:14.  He further testified that his lawsuit "is

limited to that one image" in reference to the Prophet/Romeo Image contained in the SAC.  Ex. 7

(Plaintiff Dep. Tr. 249:18-22; *see also id.* 249:25-250:2 ("Q. Are you aware of any other images of The Prophet that you're seeking damages for?  A. No.")).  Consistent with this testimony and the SAC, Plaintiff's claims are based on the assertion that the Prophet/Romeo Image infringes copyrights in the Arroza Poster.

Plaintiff registered three copyrights related to the G.I. Bro comics, including one for artwork comprising the Arroza Poster.  Plaintiff alleges that he is the "the sole owner of all right, title and interest in and to the copyrights."  SAC ¶ 16.

### b.      Distribution of the Arroza Poster

The only public display of the Arroza Poster was as a handout at a small number of comic book conventions, mostly in East Texas, and on Last Sentry Comics's social media page.  Ex. 10 (Travis Huffman Dep. Tr. 73:15-19).  While Plaintiff testified that he attended the San Diego Comic-Con in 2015, he could not have had the Arroza Poster with him at that event because it was not created until May 11, 2016.  Ex. 11 (Travis Huffman Dep. Tr. 182:17-184:6, 185:21-25); *see also* Ex. 12 (Pl.'s Resp. to Reqs. for Admission, No. 20 (admitting he does not recall having the poster at the 2015 San Diego Comic-Con)).  Fewer than 500 copies of the Arroza Poster were printed.  Ex. 10 (Travis Huffman Dep. Tr. 73:23-74:16).

### 3.      The Prophet Character and Prophet/Romeo Image

### a.      The Genesis of Prophet for *Call of Duty: Black Ops 4*

*Call of Duty* is one of the most successful video game franchises in the world.  It has released installments, typically annually, since 2003.  Treyarch is an Activision subsidiary that developed the *Black Ops* installments of the *Call of Duty* franchise.  The character David "Prophet" Wilkes was originally created for the game *Call of Duty: Black Ops III*, which was released in 2015.  Ainuddin Decl. ¶ 3.  Prophet was one of a number of "specialist" characters that players could utilize to play the game.  In *Black Ops III*, Prophet was a Black character with

cybernetic enhancements.  Activision decided to bring back Prophet as a playable character for *Black Ops 4*.  *Id*. ¶ 4.

Treyarch was primarily responsible for overseeing the updating of the Prophet character for *Black Ops 4*.  *See* Ainuddin Decl. ¶¶ 3-5.  Murad Ainuddin was in charge of the Prophet "Reset" project.  *Id*. ¶ 6.  To create the in-game version of Prophet—and the other *Black Ops 4* specialists—Treyarch contracted with Karakter Design Studios.  *Id*. ¶¶ 6-7.  Henrik Bolle was in charge of the project at Karakter.  Bolle Decl. ¶¶ 2-3.

On June 27, 2017, Treyarch sent Karakter a kickoff slide deck.  *Id*. ¶ 4 & Ex 1.  From there, the two companies worked together over ten design rounds to create a new concept art depiction of Prophet.  Bunting Decl. ¶ 4 & Exs. 1-3.  This process included consideration of eight different possible depictions for Prophet, both with and without dreadlocks.  Bolle Decl. ¶ 5 & Ex. 2.  During this process, Karakter meticulously documented its inspirations and influences and provided this documentation to Treyarch per Treyarch's requirements.[6]  Bolle Decl. ¶ 5 & Ex. 4; Ainuddin Decl. ¶¶ 6-7.  At no point in this process or documentation did Treyarch or Karakter reference Plaintiff, G.I. Bro, or the Arroza Poster.  Bolle Decl. ¶¶ 7-11, 19; Ainuddin Decl. ¶¶ 9-13, 21.  Neither Mr. Ainuddin nor Mr. Bolle were aware of the Arroza Poster, G.I. Bro, or Plaintiff.  Bolle Decl. ¶¶ 7-11, 19; Ainuddin Decl. ¶¶ 9-13, 21.

This process culminated in a concept image for the in-game Prophet character.[7]  Bolle Decl. Ex. 3.  Plaintiff does not contend the in-game image of Prophet is infringing.  As he testified at his deposition, "if [the in-game image] was the image that was advertised we

---

[6] Indeed, Karakter's contracts with Activision required it to aver that "the Material should not infringe on the . . . rights of any person or entity."  *See, e.g.*, Bunting Decl. ¶ 4.

[7] Contractor Long Ouyang also provided finishing work on the gear shown in the Prophet concept art, which is not alleged to be infringing.  Bunting Decl. ¶ 5.

wouldn't be having this conversation" because "[i]t doesn't have any similarities to the side-by-side pictures that's in the complaint."  Ex. 6 (Plaintiff Dep. Tr. 166:17-167:7, 168:2-14); Ex. 13 (Plaintiff Dep. Ex. 15).

### b.     The Creation of the Prophet/Romeo Image

Activision's marketing team contracted with Petrol Advertising to create the marketing images for *Black Ops 4*.  Hunter Decl. ¶¶ 2-9 & Ex. 7 (ACT00000200 at 208).  On January 10, 2018, Petrol received the concept image and in-game depictions of the *Black Ops 4* characters from Treyarch.  *Id.*  Petrol began casting for a photo shoot to create the marketing images for the seven remaining specialists, including Prophet (the other three specialists were part of an earlier photo shoot).  *Id.*; Rogers Decl. Ex. 1 (ACT00000028 at 48-55).  Three actors were considered for the role of Prophet; ultimately, William Romeo was chosen.  Hunter Decl. Ex. 7 (ACT00000200 at 202).

Over three days in February of 2018, Petrol held photo shoots for actors cast to model as the specialists, including Prophet.  Hunter Decl. ¶¶ 5-8 & Exs. 3-7.  Many hundreds of photographs were taken.  *See, e.g.*, Wang Decl. ¶ 4 & Exs. 1-8; Hunter Decl. ¶ 7 & Ex. 4.  From these photographs, Petrol chose a selection for each specialist, considering the candidate poses holistically to determine the best lineup.  Wang Decl. ¶ 4.  Ultimately, Activision and Petrol chose a single photograph for each specialist.  From the chosen photograph of William Romeo, Petrol rendered the final specialist Prophet art, resulting in the Prophet/Romeo Image.  Hunter Decl. ¶ 8.  At no time during this process did anyone at Petrol seek reference materials other than those provided by Treyarch.  *Id.* ¶ 4.

This final specialist Prophet art—the Prophet/Romeo Image—is the image accused in the SAC.  *Compare* Hunter Decl. Ex. 7 (ACT00000200 at 206), *with* SAC ¶ 8.  This image was considered secondary art in the marketing of *Black Ops 4*, and was not used on the cover of the

game or in any television or online advertising, or trailers.  Wang Decl. ¶ 5.

### 4.    The Individuals Involved in Creating the Prophet/Romeo Image Had Never Seen the Arroza Poster or Heard of G.I. Bro.

The key individuals involved in creating the Prophet concept image and the Prophet/Romeo Image had never seen the Arroza Poster, or heard of G.I. Bro, prior to this lawsuit.  Dan Bunting and Murad Ainuddin at Treyarch and Henrik Bolle at Karakter were responsible for creating the concept art for the Prophet character for *Black Ops 4*.  Carolyn Wang at Activision, and Alan Hunter and Evan Rogers at Petrol, were responsible for and made the decisions on creating the Prophet/Romeo Image based on the concept art provided by Treyarch.  All have all submitted sworn declarations to these facts.  Bunting Decl. ¶¶ 6-10, 18; Ainuddin Decl. ¶¶ 9-13, 21; Wang Decl. ¶¶ 11-15, 24; Bolle Decl. ¶¶ 7-11, 19; Hunter Decl. ¶¶ 10-14, 22; Rogers Decl. ¶¶ 6-10, 18.  Plaintiff had the opportunity to depose these individuals and did not elicit any testimony to the contrary.  It is an unrefuted fact that nobody involved in creating the Prophet/Romeo Image from conception to completion was aware of the Arroza Poster or G.I. Bro, or referenced them in that creative process.

### 5.    There Is No Evidence That Defendants or Their Contractors Had a Reasonable Possibility of Accessing the Arroza Poster.

The Arroza Poster had very limited distribution.  It was brought to only a handful of comic book conventions, mostly small conventions located in East Texas.  There is no evidence that anyone affiliated with Defendants attended those conventions.  Ex. 10 (Travis Huffman Dep. Tr. 88:20-93:14).  Plaintiff alleges that the Arroza Poster might have been displayed on Last Sentry Comics's social media pages, but there is no evidence anyone affiliated with Defendants or their contractors ever accessed those pages.  *Id.* 70:23-71:3.  Beyond that, the Arroza Poster was not distributed publicly.  *Id.* 73:15-19.  Plaintiff does not allege that the poster was ever sent to Activision or any Activision employee (or any of its subsidiaries or contractors).  Plaintiff has

presented no evidence that any representative of any Defendant ever accessed the Arroza Poster.

As noted above, individuals at Activision, Treyarch, Karakter, and Petrol who were responsible for the creation of the Prophet concept image for *Black Ops 4* and the Prophet/Romeo Image have stated under penalty of perjury that they had not seen the Arroza Poster before this lawsuit.  *See* Bunting Decl. ¶¶ 6-10, 18; Ainuddin Decl. ¶¶ 9-13, 21; Wang Decl. 11-15, 24; Bolle Decl. 7-11, 19; Hunter Decl. ¶¶ 10-14, 22; Rogers Decl. ¶¶ 6-10, 18. They also have declared that they did not attend any of the comic book conventions where the poster was displayed or accessed Last Sentry Comics's social media pages.  *See* Bunting Decl. ¶¶ 10-11; Ainuddin Decl. ¶¶ 13-14; Wang Decl. ¶¶ 15-16; Bolle Decl. ¶¶ 11-12; Hunter Decl. ¶¶ 14-15; Rogers Decl. ¶¶ 10-11.

> **6.      Plaintiff Conceded That the Prophet/Romeo Image Could Have Been Independently Created.**

At his deposition, Plaintiff agreed that it was "possible" that the purported similarities between the Arroza Poster and Prophet/Romeo Image were merely coincidental.  Ex. 6 (Plaintiff Dep. Tr. 194:2-5 ("Q. Could those similarities be the result of a coincidence? . . . .  A. Anything is possible."); 195:5-8 ("Q. But it's at least conceivable or possible that it's a coincidence; is that right? . . . .  A. Again, anything is possible.")).

## III.    LEGAL STANDARDS

### A.      Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a

genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000) (citation omitted).

### B.      Standing

The requirement that a plaintiff have standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "One principle of prudential standing requires 'that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citation omitted) (dismissing case for lack of prudential standing).

### C.      Factual Copying

"To prove copyright infringement, a plaintiff must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (citation omitted).  "The second prong, factual copying, can be proved by direct or circumstantial evidence." *Id.*  Plaintiff claims no direct evidence of factual copying.

To establish copying by circumstantial evidence requires proof that "(1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." *Id.* (citations omitted).  "To establish access, a plaintiff must prove that 'the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work' before creating the infringing work." *Id.* at 152-53 (quoting *Peel & Co. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001)).  "Indeed, '[a] bare possibility will not suffice; neither will a finding of access based on speculation or conjecture.'" *Id.* at 153 (quoting *Peel*, 238 F.3d at 394-95).  "Reasoning that amounts to nothing

more than a 'tortuous chain of hypothetical transmittals' is insufficient to infer access."  *Id.* (citations omitted).

"[O]nce the moving party has properly supported his summary judgment motion, the nonmoving party must rebut with 'significant probative' evidence."  *Id.* (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978) (affirming summary judgment based on lack of access)).  Indeed, "[s]uch evidence must be sufficient on its own to 'support a jury verdict in the nonmoving party's favor.'"  *Id.* (citations omitted).  Thus, "[t]aking the access and summary judgment standards together, a plaintiff can survive summary judgment only if his evidence is *significantly probative of a reasonable opportunity* for access."  *Id.*

In the absence of evidence of access, "factual copying may be proved by showing such a 'striking similarity' between the two works that the similarity could only be explained by actual copying."  *Armour*, 512 F.3d at 152 n.3 (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 371 n.10 (5th Cir. 2004)).  The similarity must be "of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.  *Id.*  (quoting *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984)).  Striking similarity must "preclude the ***possibility*** of independent creation."  *Ferguson*, 584 F.2d at 113 (emphasis added) (granting summary judgment); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) ("A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole ***does not preclude any reasonable possibility*** of independent creation.") (emphasis added).

### D.    Independent Creation Is a Complete Defense

"Even if [a plaintiff] establishes a prima facie case of copying, [the defendant] still may rebut that case with evidence of independent creation."  *Peel & Co.*, 238 F.3d at 398.  "If a defendant offers evidence of independent creation, the plaintiff has the burden of proving that the

defendant in fact copied the protected material." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir. 1981).

## IV.   DISCUSSION

### A.   Plaintiff Lacks Standing to Bring a Copyright Infringement Suit Because WWE, Not Plaintiff, Is the Copyright Owner.

A foundational element of any copyright claim is "ownership of the copyrighted material." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). But a copyright owner may convey rights in the copyright to another party, at which point "the assignee becomes the real party in interest for all subsequent infringement claims." *Foote v. Franklin Mint*, No. CA 3:97-CV-1214-R, 1998 WL 970179, at *5 (N.D. Tex. Oct. 28, 1998); *see also* 17 U.S.C. § 201(d). A copyright owner cannot sue for infringement of one of the rights he has conveyed to another party unless he retains some right or interest in that copyright. *See, e.g., Sanchez v. Hacienda Records & Recording Studio, Inc.*, No. H-11-3855, 2015 WL 1219651, at *6 (S.D. Tex. Mar. 17, 2015) (party transferring copyright to third party lacked standing to sue after transfer was complete); *see also Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 886 (9th Cir. 2005) ("Congress did not envision . . . that the right to sue was a right severable from ownership of one of the authorized exclusive rights."). Only the "legal or beneficial owner of an exclusive right under a copyright" may sue for copyright infringement. 17 U.S.C. § 501(b).



.⁸ Ex. 9 (2017 NA ¶ 4(a) & Ex. A).

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████

████████████████████████efendants concern unauthorized copying, distribution and

sale, and creation of a derivative work, the Arroza Poster.  Plaintiff admits that the copyrighted

works, including the Arroza Poster, are derived from Plaintiff's G.I. Bro wrestling persona and

gimmick.  SAC ¶¶ 14-15. ██████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

Plaintiff alleges that he is the legal owner of the copyrighted works.  SAC ¶ 16.  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**B.    There Is No Evidence to Create a Genuine Dispute That Defendants Accessed the Arroza Poster.**

**1.    Plaintiff Has Produced No Evidence That Defendants Ever Saw the Arroza Poster.**

Defendants never saw the obscure Arroza Poster prior to this lawsuit being filed:  there is no genuine dispute about this fact.  Each of the individuals significantly involved in conceiving of and developing the Prophet concept art for *Black Ops 4* and/or in creating the Prophet/Romeo Image has averred that they had never seen the Arroza poster prior to this lawsuit, or been to any regional conventions or website where Plaintiff claims it was shown.  Bunting Decl. ¶¶ 6-11, 18; Ainuddin Decl. ¶¶ 9-14, 21; Wang Decl. ¶¶ 15-16; Bolle Decl. ¶¶ 7-12, 19; Hunter Decl. ¶¶ 10-15, 22; Rogers Decl. ¶¶ 6-11, 18.  And there is no evidence otherwise.  Though not encompassed by the alleged infringement here, these individuals have also never seen the G.I. Bro comics or heard of G.I. Bro.  Bunting Decl. ¶¶ 6-9, 18; Ainuddin Decl. ¶¶ 9-14, 21; Wang Decl. ¶ 11-15, 24; Bolle Decl. ¶¶ 7-12, 19; Hunter Decl. ¶¶ 10-13, 22; Rogers Decl. ¶¶ 6-10, 18.  And Plaintiff agreed in sworn testimony that he had "no knowledge of anything like that" when asked if he had ever had contact with Defendants.  Ex. 7 (Plaintiff Dep. Tr. 259:16-262:10).  When asked what his theory of access was, Plaintiff also punted, claiming he "cannot possibly know what Defendant's 4000+ employees do each day of their lives[.]"  Ex. 28 (Pl.'s Am. Answers to First Set of Interrogs., No. 4).  But it is his burden to show access, and he cannot do so through mere

speculation.  *Batiste v. Lewis*, -- F.3d --, No. 19-30400, 2020 WL 5640589, at *5 (5th Cir. Sept. 22, 2020) (holding no access where plaintiff "offered no evidence to dispute" sworn declarations that defendants had never "heard of [plaintiff] or listened to his music before this lawsuit").

The Fifth Circuit requires a copyright infringement plaintiff to establish "a reasonable possibility of access" by the defendant.  *Ferguson*, 584 F.2d at 113.  Thus, to withstand summary judgment, Plaintiff must point to *evidence*—not speculation—creating a genuine issue of fact as to whether Defendants had a reasonable possibility of accessing the Arroza Poster.  If Plaintiff can provide only "speculation and conjecture" regarding access by Defendants, summary judgment must be entered in Defendants' favor.  *Id*.

For example, in *Batiste*, the Fifth Circuit recently held that a work "broadcast on local radio stations; sold in record stores, on [the plaintiff's] website, and at live shows; and digitally downloaded or streamed through online services" was not widely disseminated sufficient to establish a reasonable probability of access because the evidence proffered showed only a limited distribution through each of these channels.  *Batiste*, 2020 WL 5640589, at *5.  The court also held that an attempt to establish a "chain-of-events" theory failed where the defendants performed an event nearby a store where the work was sold because it established no more than a "bare possibility of access," which was contradicted by sworn testimony provided by the defendants that they had never heard of the plaintiff or listened to his music.  *Id.*

Similarly, in *Duncan v. Wood*, 54 F. App'x 591 (5th Cir. 2002) (per curiam), the Fifth Circuit held that evidence the allegedly infringed work, a poem, was distributed throughout the country in a calendar, a book, and a poetry anthology created no more than a bare possibility that the defendants had access to the work.  The Fifth Circuit therefore affirmed the district court's award of summary judgment to the defendant based on insufficient evidence of access.  *Id.* at

591.

In *Horizon Comics Productions Inc. v. Marvel Entertainment, LLC*, No. 16-CV-2499

(JPO), 2019 WL 3080847, at \*4 (S.D.N.Y. July 15, 2019), Marvel was accused of basing an *Iron*

*Man 3* poster on a comic book image of a character from the comic book series *Radix*.  Plaintiff

alleged a theory of access whereby several Marvel employees were supposedly familiar with

*Radix* generally and were professionally associated with the creator of the image that was

allegedly infringed.  *Id.*  The court rejected this theory as depending on pure speculation.  *Id.* at

\*4-\*5.  The court noted that each of the Marvel employees involved in creating the *Iron Man 3*

poster denied seeing the allegedly infringed image.  *Id.* at \*4.  It further held that general

awareness of the *Radix* franchise did not equate to awareness of the **specific image at issue.**  *Id.*

Here, Plaintiff's theory of access is far more attenuated.  All of the key artists involved in

the creation of the Prophet/Romeo Image have denied not only seeing the Arroza Poster but of

ever having heard of Plaintiff or G.I. Bro prior to this lawsuit.  Plaintiff has no evidence to rebut

these denials.  Plaintiff relies instead on allegations that he took the Arroza Poster to several

regional comic book conventions, mostly in East Texas.  But nobody involved in creating the

Prophet/Romeo Image attended these conventions, much less stumbled across Plaintiff's booth

and happened to see this particular poster.[9]  Ex. 6 (Plaintiff Dep. Tr. 120:13-21 ("Q. Do you

remember anyone from a video game company introducing themselves to you as someone from a

video game company at any of these conventions?  A. I can't say yeah, I can't say no, to be

honest. Q. You don't have any particular recollection of that?  A. I don't have any

---

[9] Plaintiff also alleges he attended the 2015 San Diego Comic-Con, where Activision does
maintain a presence.  Ex. 6 (Plaintiff Dep. Tr. 128:6-11).  However, the Arroza poster was
created in *2016* and did not exist at the time of that convention.  Ex. 11 (Travis Huffman Dep.
Tr. 182:17-184:6; 185:21-25); *see also* Ex. 12 (Pl.'s Resp. to Reqs. for Admission, No. 20
(admitting he does not recall having the poster at the 2015 San Diego Comic-Con)).

recollection.")).  Nor does Plaintiff remember distributing the Arroza Poster at any particular

convention or have any documentary evidence the Arroza Poster was distributed at any particular

convention.  *Id.* 155:2-9.

### 2. Mere Online Posting of the Arroza Poster Is Insufficient to Establish Access.

Plaintiff may argue that it is hypothetically possible that an employee at one of

Defendants' companies accessed the Arroza Poster online.  Plaintiffs have not presented any

evidence showing when or how the Arroza Poster may have been available on the internet.

Regardless, numerous courts have rejected similar arguments and granted summary judgment to

defendants accused of infringement predicated on similar speculation of online access.

For example, in *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir.

2017), the Seventh Circuit affirmed the district court's determination that there was no triable

issue as to access to the copyrighted works under a theory of online access, stating in no

uncertain terms that "[s]imply having posted its designs on its website cannot spare Design

Basics from summary judgment."  *Id.* at 1106.  In relevant part, the court observed that the

plaintiff's witness "did not know when any of the [works] were uploaded to the site, ***nor did he***

***know whether Lexington or its agents ever accessed the site*.*"  *Id.* (emphasis added).  In light of

this evidence, the court explained "that a plaintiff who cannot show striking similarity and whose

evidence of access reduces to the mere existence of a website cannot survive summary judgment

on a copyright infringement claim."  *Id.* at 1108; *see also Building Graphics, Inc. v. Lennar*

*Corp.*, 708 F.3d 573, 577-78 (4th Cir. 2013) (same); *Cain v. Hallmark Cards, Inc.*, No. 3:15-

00351-JWD-EWD, 2016 WL 3189231, at *5 (M.D. La. June 6, 2016) (holding that "establishing

a bare possibility of access is not enough, and [that] a plaintiff must prove that . . . a defendant

had a reasonable possibility of viewing the work" and holding courts "have consistently refused

to treat internet publication alone as sufficient to engender this requisite possibility.") (internal

quotations marks omitted) (citation omitted) (alterations omitted).

In *Mills v. Ayala*, No. 08-cv-5168, 2010 WL 420556 (E.D. La. Jan. 29, 2010), the district

court entered summary judgment in favor of a defendant accused of copying the plaintiff's song.

The plaintiff submitted declarations suggesting the song was played on a local radio station,

which also broadcast over the internet, and claimed that the song had been sold and distributed

on hundreds of CDs.  *Id.* at *2.  The court opined that the evidence demonstrated the plaintiff had

"achieved some local popularity through his song," but concluded, based on that evidence, it was

"mere speculation to assume" that the defendant had access to the song.  *Id.* at *3.  Evidence that

the song was broadcast over the internet created only a "bare possibility" that the defendant had

access to the song, and this "bare possibility" was not "significantly probative" of access.  *Id.*

The evidence of access here is far weaker than the evidence at issue in each of these

cases.  Here, Plaintiff has produced no evidence that Defendants knew of, let alone accessed, the

Arroza Poster or the Last Sentry Comics website or social media pages.  In fact, Defendants have

submitted uncontroverted declarations stating no person involved in the creation of the Prophet

concept art or Prophet/Romeo Image knew of the Arroza Poster or visited the website where it

was allegedly available.

Further, the evidence demonstrates that the online presence of the Arroza Poster was, at

best, minimal.  Plaintiff has not produced any evidence of when the Arroza Poster was accessible

over the internet.  Plaintiff has not produced evidence of any online sales of the Arroza Poster,

and even as to the comic books, his evidence shows only ***seven*** total online sales, all made ***after***

*Black Ops 4* was released.  Ex. 14 (P_000215).  This is insufficient as a matter of law.

**C.**    **Plaintiff Cannot Make a Striking Similarity Argument and Therefore Cannot Overcome His Lack of Evidence of Access.**

With no direct evidence of copying and no circumstantial evidence of copying, Plaintiff may try to argue that the Prophet/Romeo Image is so strikingly similar to the Arroza Poster that only copying, and not coincidence or independent creation, can explain the similarities.  But this argument is also foreclosed to Plaintiff.

First and foremost, as explained below in Section IV.D., the un-contradicted evidence of independent creation forecloses the existence of striking similarity as a matter of law.  Striking similarity must "preclude the ***possibility*** of independent creation." *Ferguson*, 584 F.2d at 113 (emphasis added) (granting summary judgment); *see also Gaste*, 863 F.2d at 1068 ("A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole ***does not preclude any reasonable possibility*** of independent creation.") (emphasis added).

Second, Plaintiff admitted at his deposition that the Prophet/Romeo Image ***could have been independently created***.  Ex. 6 (Plaintiff Dep. Tr. 194:2-195:12).  Courts have held that similar admissions preclude a finding of striking similarity.  For example, in *Vargas v. Transeau*, 514 F. Supp. 2d 439, 445 (S.D.N.Y. 2007), *aff'd sub nom. Vargas v. Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009), the court noted that plaintiff's expert was unable to rule out the possibility that the accused work had been created independently and held that a plaintiff was required to demonstrate "*no* possibility of independent creation" before the court could find striking similarity.  The possibility, however remote, that the accused work had been created independently completely precluded a finding of striking similarity.  *Id.*

Here, Plaintiff himself admitted freely that independent creation was a possibility.  Ex. 6 (Plaintiff Dep. Tr. 194:2-5 ("Q. Could those similarities be the result of a coincidence? . . . .  A.

Anything is possible."); 195:5-8 ("Q. But it's at least conceivable or possible that it's a coincidence; is that right? . . . .  A. Again, anything is possible.")).  Apart from Defendants' overwhelming evidence of independent creation, discussed above, Plaintiff's concession that the accused work could have been independently created forecloses a finding of striking similarity. And Plaintiff has offered *no* expert testimony on the similarity of the Arroza Poster and Prophet/Romeo Image, much less expert analysis showing that the works are so similar that independent creation was impossible.[10]

Third, even assuming that a finding of striking similarity was not precluded by the independent creation evidence and Plaintiff's admissions that it was possible the Prophet/Romeo Image was independently created, the Prophet/Romeo Image and the Arroza Poster are not strikingly similar.  Striking similarity requires "evidence that [the images] were sufficiently unique or complex so as to preclude ***all explanations other than copying.***"  *Guzman v. Hacienda Records & Recording Studios, Inc.*, 808 F.3d 1031, 1040 (5th Cir. 2015) (emphasis added).  The works must be "so identical as to preclude any reasonable possibility of independent creation." *Dimmie v. Carey*, 88 F. Supp. 2d 142, 150 (S.D.N.Y 2000).

This is a high standard.  Even "virtually identical" works are not necessarily strikingly similar when those similarities are "common to the . . . genre or common in other" works. *Batiste*, 2020 WL 564059, at *6 (quoting *Guzman*, 808 F.3d at 1039-40).  As further example, the United States District Court for the Southern District of Texas has held that two pictures of Arnold Palmer were not even substantially similar—much less strikingly similar—to one another, even though they were taken of the same subject in a sitting pose looking at camera and

---

[10] Indeed, Plaintiff's own expert, Dr. Mark van Langeveld, admitted the opposite: that the photographs of William Romeo dressed as Prophet were consistent with the depiction of Prophet in the Prophet/Romeo Image.  Ex. 15 (van Langeveld Dep. Tr. 87:17-88:6).

wearing a similar shirt because the court identified subtle differences in the lighting, expression, angle, and age of the subject.  *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 638-39 (S.D. Tex. 2007).[11]  In *Horizon Comics*, the court ruled the accused *Iron Man 3* poster was not strikingly similar to the *Radix* drawing.  Both characters were crouched on one knee and wearing red, metallic suits with blue lights, but the court discerned other differences in the images, including "differences in pose, differing placements of blue lights," "significantly different overall coloring" and the existence of a battle scene in the background of the *Iron Man 3* poster that did not exist in the *Radix* drawing.  *Horizon Comics*, 2019 WL 3080847, at *6 (citation omitted).



*Id.* at *1.

Similarly, here, substantial differences between the accused images on the one hand and the Arroza Poster and the comic books on the other preclude a finding of striking similarity.  To start, Plaintiff agreed that the clothing and weapons are different.  Ex. 7 (Plaintiff Dep. Tr. 272:25-273:13).

---

[11] Similarly, another district court has held that renderings of the character SpongeBob SquarePants were not strikingly similar to renderings of a character called Mr. Bob Spongee even though both drawings depicted anthromorphized, square, yellow sponges named Bob. *Walker v. Viacom Int'l Inc.*, No. C 06-4931 SI, 2008 WL 2050964, at *8 (N.D. Cal. May 13, 2008).

 

SAC ¶ 8.

And one of the *G.I. Bro* comic book writers, Heath West, readily identified multiple

differences between the Arroza Poster and the Prophet/Romeo Image.  *See* Ex. 16 (West Dep. Tr.

55:12-60:20).  These differences include:

- The characters hold "totally different" weapons; *id.* 55:23-56:6;
- The characters hold their weapons differently: G.I. Bro holds his weapon at his waist, while Prophet holds his weapon at his chest; *id.* 56:6-9;
- The backgrounds are different: the background behind G.I. Bro is orange, with a crumpled paper effect, while Prophet's background is black with the Roman numeral four behind him; *id.* 56:15-20, 58:18-20;
- Sharmell Huffman appears in the Arroza Poster, while nobody but Prophet appears in the Prophet/Romeo Image; *id.* 58:6-13;
- The clothing is different: G.I. Bro wears a plain black T-shirt, while Prophet is wearing military clothing; *id.* 56:21-57:3;
- The characters' hair style and placement are different: G.I. Bro has thick dreadlocks that fall in front of his shoulders, while Prophet has curlier dreadlocks that fall behind his shoulders; *id.* 59:11-21;
- The lighting of the images is different:  G.I. Bro's face is fully lit, while Prophet's face is in shadow; *id.* 60:3-12;
- The images are styled differently: the G.I. Bro image has a crosshair over G.I. Bro's head, while the Prophet image does not; *id.* 59:22-24; and
- The characters' posture and placement within the image are different: G.I. Bro stands straight up, while Prophet's knees are bent; *id.* 57:23-58:5.

The images feature the following additional differences:

- The characters have different eye color: G.I. Bro has brown eyes, while Prophet has blue eyes;
- The arms of the characters are different: G.I. Bro's biceps are exposed and significantly emphasized, while Prophet's are covered and cannot be seen;

- The characters' headgear is different: G.I. Bro wears a simple du rag, while Prophet wears functional headgear related to his cybernetic enhancements; and
- The direction the characters are facing is different: G.I. Bro looks straight out of the image, whereas Prophet faces to his right.

Defendants' experts, Douglas Wolk and Dr. Ian Bogost, readily dismantled any notion that the images are similar in their respective reports. The opinions in their reports are unrebutted; Plaintiff simply failed to put forward an expert on substantial similarity. Without testimony or expert opinion, Plaintiff has no way to "distinguish between protectable and unprotectable elements of the copyrighted work," as he must. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015).

As Defendants' experts explain, the only similarity between the Arroza Poster and the Prophet/Romeo Image is that both feature Black military men with dreadlocks (of varying thickness and placement) holding weapons (though they are different weapons) and standing in a generic military pose.[12] Ex. 17 (Wolk Expert Rep. ¶¶ 18-20). But such broad characteristics are not copyrightable. *See, e.g.*, *Cabell v. Sony Pictures Entm't, Inc.*, 714 F. Supp. 2d 452, 459 (S.D.N.Y. 2010) ("fighting pose is an unprotectable idea under copyright law") (citing *Mattell, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)).

And, even if such broad characteristics were copyrightable, the Arroza Poster and Prophet/Romeo Image do not approach the high standard of striking similarity: The differences are too numerous—and the commonalities too few and too generic—for Plaintiff's case to survive summary judgment. Douglas Wolk explains the differences in detail in his report. Ex. 17 (Wolk Expert Rep. ¶¶ 20-33). As he explains, "the only similarities between those two

---

[12] Travis Huffman agreed at his deposition that this is a pose that has been "used quite often whenever you're trying to show a military" person and that it has been used since "the Eighties." Ex. 11 (Travis Huffman Dep. Tr. 214:14-22). He further agreed the pose was "generic of military poses." *Id.* 214:24-215:7.

images are at a broad surface level, and evaporate on close examination." *Id.* ¶ 56.  And Dr. Ian

Bogost explains that both images are drawn from an existing trope, the dreadlocked warrior, that

is very common in modern media.  Ex. 18 (Bogost Expert Rep. ¶¶ 63-70).  He explains that:

> If you look at the two images in the complaint, the one of G.I. Bro
> and the other of BO4 Prophet, and consider these two images
> stripped of the trappings of the archetypical dreadlocked warrior,
> the remaining (and thus defining) features of each image snaps into
> distinct focus; Prophet is a futuristic, loner soldier, and G.I. Bro is
> a retro, tough-guy playboy.  Those are not the same character, at
> all.

*Id.* ¶ 70.  In conjunction with Plaintiff's admissions and the unrefuted evidence of independent

creation, expert opinion makes clear that the significant differences in the characteristics of the

images themselves, and the insignificance of the purported similarities, preclude any

determination that striking similarity exists.

Indeed, it appears that large portions of the Arroza Poster—the pose, the wardrobe, the

weapon, among others—are far more similar to a 2013 *G.I. Joe: Retaliation 3D* poster of

Dwayne Johnson than the Prophet/Romeo Image.  The two images are below.  Notably, neither

Plaintiff nor Travis Huffman could rule out the possibility that the body of G.I. Bro in the Arroza

Poster was copied from the G.I. Joe 3D poster.  Ex. 11 (Travis Huffman Dep. Tr. 220:6-10); Ex.

7 (Plaintiff Dep. Tr. 241:19-242:8, 274:3-8); *see also* Ex. 17 (Wolk Expert Rep. ¶¶ 39-41).

 

Ex. 19 (Booker T. Huffman Dep. Ex. 23 (excerpts)).

> **D.    Plaintiff Has No Evidence to Create a Genuine Dispute Regarding Defendants' Independent Creation of the Prophet/Romeo Image.**

> **1.    The Prophet/Romeo Image Was Independently Created.**

"Proof of access and substantial similarity give rise to a presumption of copying that is

***fully negated when uncontradicted testimony of independent creation*** is produced." *Watt v.*

*Butler*, 457 F. App'x 856, 861 (11th Cir. 2012) (emphasis added).  There is no genuine dispute

that Defendants independently created the Prophet/Romeo Image.  The individuals significantly

involved in creating the Prophet/Romeo Image have submitted unrebutted declarations attesting

to the fact that they independently created the work.  In addition, Defendants have submitted

extensive confirming documentary evidence showing the step-by-step process of creating the

Prophet/Romeo Image.  Nowhere is there any reference to the Arroza Poster or G.I. Bro.

Plaintiff has repeatedly testified that he is only accusing the Prophet/Romeo Image of

infringing, not the entire Prophet character.  Indeed, with respect to the in-game depiction of

Prophet, he testified that "if this was the image that was advertised we wouldn't be having this

conversation" because "[i]t doesn't have any similarities to the side-by-side pictures that's in the

complaint."  Ex. 6 (Plaintiff Dep. Tr. 166:17-167:7, 168:2-14).[13]

The evidence is clear, however, that the Prophet/Romeo Image was independently

created.  The artists involved with the creation of Prophet have provided the materials both used

to develop him and documenting his development: they have "shown their work."  Indeed,

uncontradicted documentary evidence, not to mention testimony, shows that the concept art for

---

[13] Should Plaintiff now attempt to retract his testimony, and accuse the Prophet character itself, that character also was not based on G.I. Bro.  Indeed, the Prophet character originally appeared in the game *Black Ops III* in 2015, and was conceived before the G.I. Bro comic was created.

the Prophet *Black Ops 4* concept design was the result of ten rounds of independent creation and revision of artists.  Bunting Decl. ¶ 4 & Exs. 1-3.

After the concept design was finished, Petrol Advertising cast William Romeo to pose as Prophet in a photoshoot.  Petrol utilized the results of that photoshoot as the basis to create the secondary key art for marketing purposes.  Hunter Decl. ¶¶ 1-9; Rogers Decl. ¶¶ 1-5; Ex. 1 (Document Compendium).  Alan Hunter, President of Petrol Advertising, Inc. who oversaw the creative development of the Prophet/Romeo Image, provided sworn testimony that this is the photograph on which the Prophet/Romeo Image was based.  Hunter Decl. ¶ 8.

### 2.    In Similar Circumstances, Courts Grant Summary Judgment.

In *Watt*, the court held that ***testimony alone*** was sufficient to negate proof of access and substantial similarity, even though it was "not corroborated by documentary evidence or by a disinterested third-party[.]"  457 F. Appx. at 861.  Here, however, Defendants have extensively corroborated the testimony of the key personnel who created the work with reams of supporting documentation detailing the process that went into creating the Prophet character and Prophet/Romeo Image.  Plaintiff's claim would require the Court, on the basis of nothing more than speculation and conjecture, to ignore all of the evidence demonstrating the year-long process of creating concept art, casting and photographing William Romeo, and finalizing the Prophet/Romeo Image, as nothing more than an elaborate and expensive effort to obfuscate Defendants' copying of the Arroza Poster.  It would also have to assume that one of more individuals' sworn testimony was false despite the lack of any contradictory evidence.

A case nearly identical in many respects to the one at hand is *Horizon Comics*, discussed above.  In that case, Marvel, the defendant, introduced unrebutted evidence demonstrating the independent creation of the poster.  *Horizon Comics*, 2019 WL 3080847, at *7.  Marvel, like Activision here, had retained an independent communications firm to create the poster, and the

firm had generated inspiration boards and produced sketches based on images sourced from prior *Iron Man* movies and comics.  *Id.*  Marvel had also arranged a photo shoot featuring Robert Downey, Jr., the actor who played Iron Man in the film series, to facilitate poster design.  *Id.* The court observed that photographs generated from that shoot and ultimately used to create the accused *Iron Man 3* poster was "strong, convincing, and persuasive evidence of independent creation," and granted summary judgment in Marvel's favor.  *Id.* (internal quotation marks omitted).

   *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1233 (11th Cir. 2002) is also instructive. There, a composer accused a songwriter of copying his song in creating a church hymnal called "Emmanuel."  *Id.* at 1231.  However, the defendant was able to defeat the claim of infringement because he submitted an affidavit in which he stated he "independently created" the song "Emmanuel" during a church service.  *Id.* at 1233.  The defendant's affidavit also stated that he did not use pre-existing materials as a basis for the song.  *Id.*  He submitted affidavits of several witnesses who corroborated his creation of "Emmanuel."  *Id.*  Noting that the plaintiff offered no evidence that contradicted the defendant's affidavit evidence of independent creation and opining that "uncontradicted evidence of independent creation . . . fully negates any claim of infringement," the Eleventh Circuit affirmed the court's granting summary judgment.  *Id.*

   The Eleventh Circuit has also held that speculative theories of copying not supported by evidence are insufficient to overcome evidence of independent creation.  In *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007), the defendant, a company that designed EPCOT, was accused of infringement by the heir to an artist's estate who claimed the defendant infringed the artist's work.  The defendant presented substantial evidence of independent creation that showed the germination of the idea for EPCOT in the Disney's International Street

and City of Tomorrow up through Disney's participation in the 1964 World's Fair into the

iteration of EPCOT at the time it opened.  *Id.*  Plaintiff's "conclusory statements" in opposition

were "insufficient to raise a genuine issue of material fact as to this issue."  *Id.*

Similarly, here, Defendants have offered the testimony of the artists who were intimately

involved in creating the Prophet/Romeo Image, corroborating affidavits from other contractors

involved in the creation process, and reams of documentary evidence documenting the process

that led to the work.   The photo shoot evidence which the court concluded was dispositive in

*Horizon Comics* is similar to the photo shoot evidence Defendants have adduced here.  Plaintiff

cannot rebut the overwhelming showing of independent creation by merely providing

"conclusory statements" to the contrary.  He must offer substantial evidence in the record that

contradicts that evidence.  He has not done so, and this Court should grant summary judgment.

## V.     CONCLUSION

Defendants respectfully ask this Court to grant summary judgment.

Dated:  September 24, 2020                    DURIE TANGRI LLP


                                      By:    _____*/s/ Joseph C. Gratz*_____
                                             MARK A. LEMLEY (CA SBN 155830)
                                             mlemley@durietangri.com
                                             ANDREW ESBENSHADE (CA SBN 202301)
                                             aesbenshade@durietangri.com
                                             JOSEPH C. GRATZ (CA SBN 240676)
                                             jgratz@durietangri.com
                                             JESSICA E. LANIER (CA SBN 303395)
                                             jlanier@durietangri.com
                                             AARON J. BENMARK (CA SBN 312880)
                                             abenmark@durietangri.com
                                             217 Leidesdorff Street
                                             San Francisco, CA  94111
                                             Telephone:    415-362-6666
                                             Facsimile:    415-236-6300

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone:    903-934-8450
Facsimile:     903-934-9257

E. LEON CARTER (TX SBN 03914300)
lcarter@carterarnett.com
COURTNEY B. PEREZ (TX SBN 24061135)
cperez@carterarnett.com
CARTER ARNETT PLLC
8150 N. Central Expressway, Suite 500
Dallas, TX 75206
Telephone:    214-550-8188
Facsimile:     214-550-8185

Attorneys for Defendants
ACTIVISION PUBLISHING, INC.,
ACTIVISION BLIZZARD, INC., MAJOR
LEAGUE GAMING CORP., and TREYARCH
CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020 the within document was filed with the Clerk

of the Court using CM/ECF which will send notification of such filing to the attorneys of record

in this case.

<em>/s/ Melissa R. Smith</em>

Melissa R. Smith
