IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

BOOKER T. HUFFMAN,

        Plaintiff,

v.                              Civil Action No. 2:19-cv-00050-RWS-RSP

ACTIVISION PUBLISHING, INC.,
ACTIVISION BLIZZARD, INC., MAJOR
LEAGUE GAMING CORP., and
TREYARCH CORPORATION,

        Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF LACK OF NEXUS**

## I. INTRODUCTION

Plaintiff not only has failed to present a shred of evidence that any use of the Prophet/Romeo Image resulted in the sale of even a single copy of the *Black Ops 4* video game, he also explicitly asked his experts not to undertake the necessary work. Plaintiff asks the Court now, with no evidentiary support, to conclude that the use of the Prophet/Romeo Image (i) as a fill-in panel on nine outdoor marketing displays for two months and (ii) on the ***inside*** of the packaging of two game bundles is sufficient to seek all U.S. revenue from the game for all time. While expert testimony may not be required to demonstrate nexus, Plaintiff's lack of any supporting expert testimony in combination with his lack of documentary or testimonial evidence dooms his effort to recover any of Defendants' video game sales revenue.

Plaintiff's Opposition is a sleight of hand designed to distract the Court from the sparse record he has created. The issue[1] for the Court is whether there is a genuine dispute of material fact with respect to the existence of a nexus between the alleged infringement and Defendants' sales of the *Black Ops 4* video game. There is not. Accordingly, Defendants respectfully ask this Court to grant summary judgment on Plaintiff's claim for infringer's profits based on any sales of *Black Ops 4* games.

## II. ARGUMENT

### A. Sales of Posters and Calendars Are Not Subject to This Motion.

As discussed in Defendant's Opening Brief, a few posters and calendars containing the Prophet/Romeo Image were sold directly to consumers and the total sales were approximately $2,000. Those minimal sales are not the subject of this motion.

---

[1] Plaintiff claims Defendants failed to include a statement of Issues to be Decided, as required by local rules. Plaintiff is mistaken. Defendants' statement appears on the first page of its motion.

1

      **B.**      **Plaintiff Failed to Adduce Evidence of Gross Revenue of Sales of *Black Ops 4*.**

Plaintiff does not contest his failure to adduce evidence of gross revenue from sales of *Black Ops 4*. *See* Opening Br. at 9 n.8, ECF No. 105. As explained in Defendants' Opening Brief, Plaintiff's expert has repeatedly taken the position that Defendants' financial data is unreliable. For this reason alone, this Court should grant Defendants' motion for summary judgment of no nexus with respect to all revenue other than the *de minimus* poster and calendar sales. *See MGE UPS Sys., Inc. v. GE Consumer Indus., Inc.*, 622 F.3d 361, 368 (5th Cir. 2010) ("[W]hen one of the prima facie elements of a claim is damages and the claimant fails to introduce evidence of those damages, he or she commits a fatal error.") (citation omitted).

      **C.**      **There Is No Evidence that the Use of the Prophet/Romeo Image on the Inside of the Steelbook Packaging or As a Component of a Handful of *Black Ops 4* Displays Impacted Any Video Game Sales.**

Whether use of the Prophet/Romeo Image is analyzed through a direct or indirect profits lens, Plaintiff must show a nexus between the use of the Image and Defendants' revenues from *Black Ops 4* sales.[2] *See Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001), *as amended* (May 15, 2001) (discussing *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983)).

---

[2] The Steelbook is packaging and not part of the game. *Cf. Berg v. Symons*, 393 F. Supp. 2d 525, 554 (S.D. Tex. 2005) (distinguishing between product and its packaging). Accordingly, the cases Plaintiff cites are distinguishable: In each, the infringing image was contained in the product itself, not in the product's packaging or in a piece of the product severable from the whole. *See Walker v. Forbes*, 28 F.3d 409, 411 (4th Cir. 1994) (infringing photograph appeared in issue of *Forbes* magazine); *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 927 (N.D. Ill. 2009) ("Here, the painting was not used separately in an attempt to promote the sale of the textbook, but *instead forms an integrated component of the textbook*.") (emphasis added).

Further, the issue confronting the court in *Walker* was different than the dispute at hand. In *Walker*, the court analyzed whether the district court properly admitted the defendant's evidence of apportionment. Apportionment occurs *after* a plaintiff has met his burden to show a nexus between infringement and profits. *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) ("The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits."). Here, we need not reach apportionment because Plaintiff has failed to show a nexus between the alleged infringement and revenue from *Black Ops 4* game sales.

As Plaintiff admits in his Opposition, the Prophet/Romeo Image appears only on the *inside* of the Steelbook. Plaintiff has failed to explain, let alone offer supporting evidence for, his far-fetched theory that an image consumers could see only *after purchasing* a Steelbook game bundle[3] caused those consumers *to purchase* the game in the first place. *See Taylor*, 712 F.2d at 1122 (insufficient for plaintiff to show gross revenues from all sales instead of demonstrating gross revenues from sale of infringing products). Further, there is no evidence before the Court that use of the Romeo/Prophet Image on outdoor marketing displays had any impact on sales of the video game. *See Leland Med. Ctrs., Inc. v. Weiss*, No. 4:07cv67, 2007 WL 2900599, at *1 (E.D. Tex. Sept. 28, 2007) (lack of causal link is nothing more than "pie in the sky" damage model). Plaintiff's reliance on the nature of the marketing campaign also does not meet his burden. Defendants' use of billboards for multiple marketing campaigns is not evidence of whether one image used alongside many others in a handful of displays drove any sales of a specific game.

Plaintiff's cases are inapposite. In *Andreas v. Volkswagen*, 336 F.3d 789 (8th Cir. 2003), the plaintiff introduced an array of compelling, specific evidence to demonstrate the nexus between infringement and the infringer's profit, to wit: (i) the infringement was the centerpiece of a single nationwide television commercial for the product and the commercial was the flagpole marketing instrument, (ii) there were several metrics indicating the effectiveness of the

---

[3] Plaintiff's calculation of revenue for the Mystery Box and Pro game bundles is inaccurate. Exhibit 10 to the Declaration of Carolyn Wang shows revenue from these two game bundles. ECF No. 103-11; *see also* Wang Decl. ¶ 7, ECF No. 103-1. Revenue from Pro and Mystery Box game bundles are $9,754,391 and $3,462,422, respectively. Plaintiff seeks to add operating income to revenue, but this is plainly double counting: revenue is a component of operating income. *See* Pl.'s Statement of Undisputed Facts, Ex. 22 at 3, ECF No. 114. The correct sum of revenue from sales of the Mystery Box and Pro game bundles is $13,216,813, not $19,979,872. And revenue from sales of such game bundles, of course, is not the same thing as profits realized due to the Prophet/Romeo Image, of which Plaintiff has adduced no evidence.

commercial (including surveys showing high consumer recall), and (iii) sales exceeded expectations. *Id.* at 796-97. None of that evidence exists here.

In *William A. Graham Co. v. Haughey*, No. CIV A 05-612, 2006 WL 3386672, at **6–8 (E.D. Pa. Nov. 21, 2006), *aff'd in part, rev'd in part and remanded,* 568 F.3d 425 (3d Cir. 2009), the district court held the plaintiff met its burden where there was evidence directly tying consumers' decision to purchase insurance policies to the infringing language contained in the written policy proposals (the marketing materials). Moreover, the plaintiff's expert explicitly excluded from his calculations the revenue from insurance policy purchases by clients who received proposals with no infringing language. There was also evidence the defendants used the infringing components for years because it was so effective.

Plaintiff's evidence is a world away from the robust showings in either of the cases he holds up as examples. As Defendants explained in their Opening Brief, the facts here are indistinguishable from the facts of cases where courts held there was an insufficient showing of nexus. *See* Opening Br. at 10-15, ECF No. 105. The opinions Defendants featured in their Opening Brief are also notable because they stressed the plaintiff's burden to tie the infringing ***component*** of infringing materials to the infringer's revenue.

Contrary to Plaintiff's characterization, the Prophet/Romeo Image is not the centerpiece of a single advertisement. The outdoor advertising displays that included the Prophet/Romeo Image always included several other specialists, and the Prophet/Romeo Image on the inside of the Steelbook is placed alongside five other secondary specialists. In fact, the Prophet/Romeo Image was included in fewer than 10% of the outdoor displays and not in any primary marketing materials. Wang Decl. ¶¶ 5, 6, 10, ECF No. 103-1. There is simply no evidence connecting the Prophet/Romeo Image in either the Steelbook or outdoor displays to any game sale revenue.

Because Plaintiff's burden to show nexus includes the burden to show a relationship between the allegedly infringing component and Defendants' revenues from *Black Op 4*, Plaintiff has failed to meet his burden.

Plaintiff's experts underscore the record's deficiencies. Each of Plaintiff's experts testified that they had conducted no analysis concerning any relationship between any use of the Prophet/Romeo Image and revenues from *Black Ops 4*. Dr. van Langeveld explicitly disclaimed having conducted any analysis of the relationship between the Prophet/Romeo Image and any revenues realized from sales of *Black Ops 4*. He further stated that, if asked, he "would have a very hard time doing that." Ex. 15 (van Langeveld Dep. Tr. 101:16-103:13), ECF No. 103-58. He also testified that a variety of factors influenced consumers to purchase the game, none of which related to the use of the Prophet/Romeo Image. *Id.* 108:11-110:5.[4] Mr. Schwartz testified that he had no opinion, and had been asked to do no analysis, as to whether the use of the Prophet/Romeo Image had any impact on sales of the game. Ex. 23 (Schwartz Dep. Tr. 55:12-58:13), ECF No. 103-66.

## III. CONCLUSION

Plaintiff has not even attempted to meet his burden of establishing a nexus between the limited use of the Prophet/Romeo Image and the portion of U.S. gross revenue of *Black Ops 4* that he seeks. For all the reasons explained above, Defendants respectfully request this Court grant Defendants' motion for summary judgment of lack of nexus and order that Plaintiff may not seek any damages based on sales of the *Black Ops* 4 video game.

---

[4] In light of these concessions, Dr. van Langeveld's general assertion in his expert report that marketing art "helps to create the perceived overall value of the product" is not meaningful. The statement is not tied to the use of *any* image of Prophet, much less the Prophet/Romeo Image. Further, the "perceived overall value of the product" (the *Black Ops 4* game) does not correlate in any presented evidence to actual revenue from sales of the game.

Dated:  October 15, 2020	DURIE TANGRI LLP

                 By: */s/ Joseph C. Gratz*
                   MARK A. LEMLEY (CA SBN 155830)
                   mlemley@durietangri.com
                   ANDREW ESBENSHADE (CA SBN 202301)
                   aesbenshade@durietangri.com
                   JOSEPH C. GRATZ (CA SBN 240676)
                   jgratz@durietangri.com
                   JESSICA E. LANIER (SBN 303395)
                   jlanier@durietangri.com
                   AARON J. BENMARK (CA SBN 312880)
                   abenmark@durietangri.com
                   217 Leidesdorff Street
                   San Francisco, CA  94111
                   Telephone:    415-362-6666
                   Facsimile:     415-236-6300

                   MELISSA R. SMITH (TX SBN 24001351)
                   melissa@gillamsmithlaw.com
                   GILLAM & SMITH, LLP
                   303 South Washington Avenue
                   Marshall, TX 75670
                   Telephone:    903-934-8450
                   Facsimile:     903-934-9257

                   E. LEON CARTER (TX SBN 03914300)
                   lcarter@carterarnett.com
                   COURTNEY B. PEREZ (TX SBN 24061135)
                   cperez@carterarnett.com
                   CARTER ARNETT PLLC
                   8150 N. Central Expressway, Suite 500
                   Dallas, TX 75206
                   Telephone:    214-550-8188
                   Facsimile:     214-550-8185

                   Attorneys for Defendants
                   ACTIVISION PUBLISHING, INC., ACTIVISION
                   BLIZZARD, INC., MAJOR LEAGUE GAMING
                   CORP., and TREYARCH CORPORATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2020 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Melissa R. Smith*
Melissa R. Smith
