**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION.**

| | | |
|---|---|---|
| BOOKER T. HUFFMAN, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:19-cv-00050-RWS-RSP |
| ACTIVISION PUBLISHING, INC., | § | |
| ACTIVISION BLIZZARD, INC., MAJOR | § | |
| LEAGUE GAMING CORP., and | § | |
| TREYARCH CORPORATION | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is the Motion to Strike Plaintiff's Jury Demand ("Motion"), filed by Defendants Activision Publishing, Inc., Activision Blizzard, Inc., Major League Gaming Corp., and Treyarch Corporation (collectively, the "Defendants"). Dkt. No. 135. Defendants move the Court to strike Plaintiff Booker T. Huffman's ("Plaintiff" or "Huffman") jury demand under the theory that the remedies sought by the Plaintiff are purely equitable, rather than legal. *Id*. at 3[1]. The Motion is **DENIED**.

### I.    BACKGROUND

The Court has discussed the relevant background facts in the above-captioned matter in its most recent Report and Recommendation. *See generally* Dkt. No. 151, Background. There is no need to repeat those details here. It is worth noting that the Plaintiff did not rebut Defendants' assertion that the only remedy it seeks for the alleged copyright infringement is in the form of infringer's profits, not actual or statutory damages. Dkt. No. 149 at 2. Additionally, Plaintiff did

---

[1] Citations are to the document numbers and page numbers assigned through ECF.

not rebut that it seeks only statutory damages for its cause of action under the Digital Millennium

Copyright Act ("DMCA"). Dkt. No. 149 at 2.

### A.     Defendants' Move to Strike Plaintiff's Jury Demand

Plaintiff asserts two causes of action against the Defendants: (1) copyright infringement

("Count I") and (2) violation of 17 U.S.C. § 1202(b) ("Count II"). Dkt. No. 135 at 3. Defendants

argue "[t]here is no statutory or constitutional right to a jury trial for Plaintiff's" Count I remedy

(i.e. infringer's profits). *Id*. at 6. Defendants further argue "the statute permitting a plaintiff to

recover infringer's profits on an infringement claim, 17 U.S.C. § 504(b), does not specify any right

to a jury trial." *Id*. Defendants rely on the analysis provided in *Fair Isaac Corp. v. Fed. Ins. Co.*,

408 F. Supp. 3d 1019, 1024-25 (D. Minn. 2019) to support their argument that there is no statutory

right to a jury trial. Defendants also argue there is no constitutional right to a jury trial for the

"infringer's profits" remedy. Dkt. No. 135 at 6. Defendants draw this conclusion, as it relates to

Count I, from a footnote in *Petrella v. MGM*, 572 U.S. 663, 668 n.1 (2014). Dkt. No. 135 at 7

("[T]he United States Supreme Court *already has concluded that recovery of profits under §*

*504(b) is an equitable remedy*."). The *Petrella* footnote states:

> As infringement remedies, the Copyright Act provides for injunctions, §502,
> impoundment and disposition of infringing articles, §503, damages and profits,
> §504, costs and attorney's fees, §505. Like other restitutional remedies, recovery
> of profits "is not easily characterized as legal or equitable," for it is an
> "amalgamation of rights and remedies drawn from both systems." Restatement
> (Third) of Restitution and Unjust Enrichment § 4, Comment *b*, p. 28 (2010). Given
> the "protean character" of the profits-recovery remedy, *see id.*, Comment *c*, at 30,
> we regard as appropriate its treatment as "equitable" in this case.

*Petrella*, 572 U.S. at 668 n.1. The Defendants urge this Court to interpret this footnote, as two

other district courts have done, as an express determination that infringer's profits under 504(b)

are "purely equitable" in nature. Dkt. No. 135 at 8; *see Fair Isaac*, 408 F. Supp. 3d at 1019; *see*

*also Navarro v. P&G Co.*, No. 1:17-cv-406-DRC, 2021 U.S. Dist. LEXIS 59169, *1–2 (S.D. Ohio Mar. 29, 2021).

As for Count II, the Defendants assert that Congress expressly pronounced § 1203 as an equitable remedy. They contend "[t]he text of [17 U.S.C.] § 1203 [] plainly provides that any such award of statutory damages is for the Court to determine, as a 'Power[] of the court' under subsection (b)." Dkt. No. 135 at 10. The Defendants also asserts there is no implicit constitutional right to a jury because the DMCA has "no comparator [to any cause of action] in late-18th-century England." *Id.* at 11. Defendants submits "this type of action and associated remedy was entirely unknown to England and the United States until the DMCA was enacted in 1998." *Id.*

### B.    Plaintiff's Response and Arguments to Defendants' Motion

As to Count I, Plaintiff contends there is a constitutional right to a jury trial.[2] Plaintiff responds that "[t]he Fifth Circuit decided [the infringer's profits] issue against Defendants over fifty years ago." Dkt. No. 144 at 7; *Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965). Plaintiff argues that *Swofford* long ago settled this very issue. Dkt. No. 144 at 7 ("[*Swofford*] rejected the defendant's argument that the plaintiffs' claim was equitable because they requested an accounting and was not a 'demand for fixed money damages in the legal sense.' Following *Dairy Queen v. Wood*, the court held that there was a legal issue in the request for an accounting." (internal citation omitted).

Plaintiff criticizes the case law cited by the Defendants as "out-of-circuit" and "contrary" to Fifth Circuit precedent. *Id.* at 9. Plaintiff states that "[i]n asking this Court to follow these out

---

[2] Plaintiff dedicates most of their brief to address Defendants' assertion that there is no constitutional right to a jury trial. Plaintiff fails to directly address whether there is a statutory right to a jury trial.

of circuit opinions, Defendants invite the Court to use a back-door device to overrule binding Fifth Circuit precedent." *Id*.

As to Count II, Huffman cites Fifth Circuit precedent to argue that claims for statutory damages arising from the DMCA can be tried before a jury. *See id*. at 17 (citing *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261 (5th Cir. 2020)). Plaintiff contends that *Energy Intelligence Grp.* "explained that the DMCA was meant to add to traditional copyright protections" and merely strengthened traditional copyright protections. *Id*.

## II.    LEGAL STANDARDS

"In an action where a single claim is presented and a single remedy demanded, the action can rationally be classified as one which historically would have been either legal or equitable." *Swofford*, 336 F.2d 406 at 409.

Whether Plaintiff's jury demand should be stricken, depends on whether the Plaintiff has "a statutory or constitutional right to a jury trial, and, if it did, the nature and extent of the right." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). If there is a statutory right to a jury trial than the analysis is complete. If not, the Court must consider whether the Seventh Amendment creates a right to jury trial. *See Feltner v. Columbia Pictures Tv,* 523 U.S. 340, 345-47 (1964).

The Seventh Amendment states:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

U.S. Const. VII. However, merely because a statute authorizes a cause of action or remedy does not necessarily "imply[] a right to a jury trial." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707-08 (1999).

"Suits at common law" refers not only to suits which the common law recognized, but to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Parsons v. Bedford*, 3 Peters 433, 447 (1830); *see Feltner,* 523 U.S. at 347-48.

The Seventh Amendment "applies not only to common-law causes of action, but also to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity . . . ." *Feltner* 523 U.S. at 348 (quoting *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 42 (1989)) (internal quotations omitted)).

Determining whether a cause of action is more analogous to cases tried in courts of law rather than courts of equity, the court examines both the nature of the action and the remedy sought. *See Tull v. United States*, 481 U.S. 412, 417–18 (1987); *cf. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990).

## III.    ANALYSIS

In this case, this Court considers whether the Plaintiff is entitled to a jury trial for Count I and Count II.

### A.    Count I: § 504(b)'s Actual Damages and Profits

(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the

copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). This Court finds the Plaintiff possess at least a statutory right to a jury trial.

### 1.     Statutory Right to a Jury Trial

Defendants contend that although § 504(b), is clearly intended to remedy copyright infringement, it does not give a statutory right to a jury trial. Dkt. No. 135 at 6. Defendants argue that the statute does not discuss whether these remedies are legal or equitable—and more importantly who should decide them. *Id*. ("First, the statute permitting a plaintiff to recover infringer's profits on an infringement claim, 17 U.S.C. § 504(b), does not specify any right to a jury trial."). Defendants do not offer much analysis on this point; they principally rely on the analysis in *Fair Isaac*. *See id*.; *Fair Isaac*, 408 F. Supp. 3d at 1024-25.

*Fair Isaac*, however, was too quick to dismiss whether a statutory right to a jury trial exists under 17 U.S.C. § 504(b); more specifically, *Fair Isaac* too quickly eschewed statutory analysis using the canons of statutory construction. *See Fair Isaac*, 408 F. Supp. 3d at 1023-1024. Though *Fair Isaac* presents one reasonable interpretation of § 504(b), there is another competing fair and reasonable interpretation that would sidestep the underlying constitutional question; the alternative construction is therefore the preferred construction. *Feltner* 523 U.S. at 345 ("Before inquiring into the applicability of the Seventh Amendment, we must first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided." (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987) (internal quotations omitted) (alteration in original)). To avoid the constitutional issue, this Court will adopt the alternative fair and reasonable interpretation of § 504(b). *See United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 53 L. Ed. 836, 29 S. Ct. 527 (1909) ("Where a statute is susceptible of two

constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."); *see also Feltner*, 523 U.S. at 358 (Scalia, J., concurring) ("The doctrine of constitutional doubt does not require that the problem-avoiding construction be the *preferable* one—the one the Court would adopt in any event. Such a standard would deprive the doctrine of all function." (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 270)).

### i.      Semantic Canons of Construction

To construe § 504(b) the Court will read the statute within the context of the surrounding statutory provisions as well as the Copyright Act as a whole. *See FDA v. Brown & Williamson*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal citation omitted)).

First, unlike §§ 502, 503, 504(c), and 505, § 504(b) does not incorporate the term "the court." Congress is presumed to have purposely omitted that term in order to distinguish it from the other remedies. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (internal citation omitted)). This is clear Congressional intent to statutorily provide a right to a jury trial. *Fair Isaac* misplaces its focus on the absence of the term "jury" from § 504(b) as determinative of whether there is a statutory right. But when § 504(b) is read in context, the absence of "jury" actually provides clarity on Congressional intent. Moreover, the reasoning in *Fair Isaac* leads to the conclusion that unless the term "jury" is used in a statute then there will always be an ambiguity about whether there is a

statutory right to a jury trial. That is too narrow an interpretation. This statutory construction provides a similarly fair and reasonable explanation that avoids the constitutional question.

Further, this Court's alternative understanding is affirmed in *Feltner*. *See Feltner*, 523 U.S. at 346. The *Feltner* Court appreciated this specific distinction when it stated:

> In fact, the other remedies provisions of the Copyright Act use the term "court" in contexts generally thought to confer authority on a judge, rather than a jury. See, e.g., § 502 ("court . . . may . . . grant temporary and final injunctions"); § 503(a) ("the court may order the impounding . . . of all copies or phonorecords"); § 503(b) ("as part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords"); § 505 ("the court in its discretion may allow the recovery of full costs" of litigation and "the court may also award a reasonable attorney's fee*"). In contrast, the Copyright Act does not use the term "court" in the subsection addressing awards of actual damages and profits, see § 504(b), which generally are thought to constitute legal relief.*

*Feltner*, 523 U.S. at 346 (emphasis added). The *Feltner* Court similarly interpreted the absence of "the court" as Congressional intent to categorize § 504(b) as legal relief. Though some have characterized this passage as *dictum* and not binding, this Court finds this statement to strongly support, if not confirm, its own interpretation of § 504(b). *Navarro*, 2021 U.S. Dist. LEXIS 59169, *13–14. And as discussed above, this construction should be adopted to avoid the constitutional question.

Second, Congressional intent to grant a statutory right to a jury trial can be inferred from the pairing of actual damages and "infringer's profits." The actual damages remedy is unmistakably legal in nature, by pairing an unmistakably legal remedy with "infringer's profits" Congress expressed an intent for courts to treat both remedies as legal. Paring an unambiguously legal remedy with a "protean" remedy—without a stronger indication that "infringer's profits" is intended to be equitable—is a signal that Congress intended for the "profits-recovery remedy" to take on a legal nature. *Cf. id.* at *14 (Congress knows how to expressly provide for a jury trial, by that same token, Congress also knows how to expressly delineate equitable remedies from legal

8

ones). If that were not the case, as Defendants have suggested, an odd result would occur. *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989) ("Where the literal reading of a statutory term would 'compel an odd result,' we must search for other evidence of congressional intent to lend the term its proper scope." (quoting *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509 (1989))). Defendants interpret § 504(b) to mean "The copyright owner is entitled to recover the actual damages [decided by a jury] . . . and any profits of the infringer [decided by the judge] that are attributable to the infringement . . . ." This Court is skeptical that Congress intended for § 504(b) to be interpreted this way. If Congress truly meant for infringer's profits to be an equitable remedy surely, it would have at least referenced "the court." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." (internal quotation marks and citations omitted)). This Court must conclude that the noticeable absence of this reference was purposeful.

Lastly—and perhaps most importantly—the Defendants' interpretation of § 504(b) goes against longstanding precedent, not only in this circuit, but in circuits throughout the United States. *Hewlett Custom Home Design, Inc. v. Frontier Custom Builders, Inc.*, 588 Fed. Appx. 359 (5th Cir. 2014); *Swofford*, 336 F.2d at 406; *Gaste v. Kaiserman*, 863 F.2d 1061, 1070, 1988 (2nd Cir. 1988); *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2nd Cir. 1985); *Singletary Construction, LLC v. Reda Home Builders*, Inc., 815 Fed. Appx. 892, 896 (6th Cir. 2020); *Balsley v. LFP, Inc.*, 691 F.3d 747, 770 (6th Cir. 2012); *Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977); *Looney Ricks Kiss Architects, Inc. v. Bryan*,

No. 07-0572, 2014 WL 931781 (W.D. La. Mar. 10, 2014); *PAR Microsystems v. Pinnacle Dev. Corp.*, 995 F. Supp. 658, 662 (N.D. Tex. 1998); *Plain Jane, Inc. v. Lechters, Inc.*, No. 95-2724, 1995 U.S. Dist. LEXIS 15461, *15, 1995 WL 608483 (E.D. La. Oct. 16, 1995); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition, "*Last Updated September 2020*". The weight of this precedent is not taken lightly, there is an overwhelming amount of authority confirming that "infringer's profits" under § 504(b) are legal money damages. Each of the case cited above had the "infringer's profit" remedy calculated by a jury. Defendants characterization of Plaintiff's selected remedy as "a disgorgement," "an accounting," and "equitable" elevates form over substance. Dkt. No. 135 at 7–8; *see Swofford*, 336 F.2d at 411 (5th Cir. 1964). Indeed, by putting the infringer's profit calculation in province of the jury the courts have ratified the notion that § 504(b) is a legal money damages remedy. Defendants argue this Court should discard this weighty and binding precedent based on *Fair Isaac*. The Court is unwilling to do so.

### 2.      Constitutional Right to a Jury Trial

Based on this Court's understanding of the history of copyright infringement in England there is a high likelihood that the Seventh Amendment gives an implied right to a jury trial. There is strong indication that the "infringer's profits" remedy is a corollary, or otherwise similar in nature, to the actual damages remedy of § 504(b). *See Feltner*, 523 U.S. at 345–46; *Swofford*, 336 F.2d at 411. Thus, "infringer's profits" is likely based in the common law. However, since the Court finds there is a statutory grant of a jury trial, the constitutional issue need not be addressed.

### B.      Count II: 17 U.S.C. §§ 1202(a), 1203(b)(3), 1203(c)(3)

17 U.S.C. § 1202(a) provides:

(a) False Copyright Management Information.—No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—

(1) provide copyright management information that is false, or
(2) distribute or import for distribution copyright management information that is false.

The remedies for violations of § 1202(a) are provided under § 1203:

(a) Civil Actions.— Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.

(b) Powers of the Court.—In an action brought under subsection (a), the court—
(1) may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free speech or the press protected under the 1st amendment to the Constitution;
(2) at any time while an action is pending, may order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation;
(3) may award damages under subsection (c);

. . .

(c) Award of Damages.—
(1) In general.—Except as otherwise provided in this title, a person committing a violation of section 1201 or 1202 is liable for either—
(A) the actual damages and any additional profits of the violator, as provided in paragraph (2), or
(B) statutory damages, as provided in paragraph (3).

. . .

(3) Statutory damages.—
(A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.
(B) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.

The question to be resolved is whether the statutory remedy sought by the Plaintiff is purely equitable. This Court finds there is a statutory right to a jury trial.

### 1.       Statutory Right to a Jury Trial

Again, statutory interpretation provides the tools necessary to discern whether there is a statutory right to a jury trial.

#### i.       Semantic Canons

Defendants argue that "[t]he text of § 1203 [] plainly provides that any such award of statutory damages is for the Court to determine, as a 'Power[] of the court' under subsection (b)." Dkt. No. 135 at 10 (footnote omitted).

Based solely on the semantic canons of construction, this Court cannot conclude whether there is a statutory grant of a jury trial. The language used in § 1203(b) is too broad for this Court to conclusively determine, on semantic grounds, whether a statutory right has been granted. § 1203(b) enumerates various remedies courts have the power to award, but the enumerated list includes remedies that are both clearly legal in nature (e.g. actual damages) and clearly equitable in nature (e.g. injunctive relief). *Compare* 17 U.S.C. §1203(b)(1) *and* 17 U.S.C. §1203(c)(1)(A). Although § 1203(b) permits "the court" to "award damages under subsection (c)," at no place does § 1203 articulate whether a judge or jury should decide statutory damages. The "Power[] of the court" term is, in this context, being used as a catch all term to describe both judges and juries. *Feltner*, 523 U.S. at 356 ("In common legal parlance, the word 'court' can mean 'the judge or judges, as distinguished from the counsel or jury.' But it also has a broader meaning, which includes both judge and jury." (Scalia, J., concurring) (internal citation omitted)). With respect to §1203(c)(3)(B), the "Power[] of the court" term is ambiguous as to whether Congress intends to place § 1203(c)(3)(B) within the province of either a judge or jury. However, the statutory inquiry is not finished, the Court must evaluate whether any substantive canons lend some clarity.

ii.      **Substantive Canons**

To properly construe § 1203 the Court will read this statute within the context of other similar provisions in the Copyright Act. *See FDA*, 529 U.S. at 133.

Here, the Court cannot distinguish any meaningful differences between the statutory damages authorized in § 504(c) and § 1203(c)(3)(B). Though the language between the two statutes is somewhat different there are significant parallels that compel this Court to conclude that Congress intended for courts to continue viewing statutory copyright remedies as legal remedies. *See Energy Intelligence*, 948 F.3d at 276.

 *Feltner* was decided in early 1998, the DMCA was signed into law in late October 1998 and went into effect two years later. *See Pearl Invs., LLC v. Std. I/O, Inc.*, No. 02-50-P-H, 324 F. Supp. 2d 43, 46 n.3 (D. Me. Apr. 20, 2004). At the time Congress passed the DMCA, it was aware of *Feltner. See Kirtsaeng v. John Wiley & Sons*, Inc., 568 U.S. 519, 521, 133 S. Ct. 1351, 1353, 185 L. Ed. 2d 392, 397 (2013) ("[W]hen a statute covers an issue previously governed by the common law, it is presumed that Congress intended to retain the substance of the common law." (quoting *Samantar v. Yousuf*, 560 U.S. 305, 320 (2010) (internal quotations omitted))); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). By adopting substantially identical language Congress is presumed to have incorporated, and otherwise left undisturbed, the *Feltner* Court's previous interpretations of statutory copyright remedies into § 1203(c)(3)(B). *See Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); *see also Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) ("The rule of *in pari*

13

*materia* -- like any canon of statutory construction -- is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context."); *New Hampshire v. Ramsey*, 366 F.3d 1, 26 (1st Cir. 2004) ("Where Congress uses the same term in the same way in two statutes with closely related goals, basic canons of statutory construction suggest a presumption that Congress intended the term to have the same meaning in both contexts." (citing *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990))).

Defendants advance no argument—other than its semantic construction arguments—regarding the relevance of § 504(c), or how it might bear on the interpretation of § 1203, likely because the Defendants know that statutory copyright remedies are creatures of law. S*ee Feltner* 523 U.S. at 353. This Court concludes that Congress intended for the § 1203(c)(3)(B) remedy to mirror the § 504(c) common law remedy, thus, § 1203(c)(3)(B) gives a right to a jury trial.

## IV.    CONCLUSION

The Motion to Strike Plaintiff's Jury Demand (Dkt. No. 135) is **DENIED**.  In the event this Court's reasoning be later declared erroneous, the Court should be deemed to have exercised its authority under Fed. R. Civ. P. 39(c)(1) to try Count I and Count II to an advisory jury. There is no reason to potentially inject error into this case before it has even made its way to trial. *See Simler v. Conner*, 372 U.S. 221, 222 ("The federal policy favoring jury trials is of historic and continuing strength.").

**SIGNED this 8th day of June, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE