# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

BOOKER T. HUFFMAN,

        Plaintiff,

v.

ACTIVISION PUBLISHING, INC.,
ACTIVISION BLIZZARD, INC., MAJOR
LEAGUE GAMING CORP., and
TREYARCH CORPORATION,

        Defendants.

Civil Action No. 2:19-cv-00050-RWS-RSP

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

**I.      INTRODUCTION**

Plaintiff has not presented sufficient evidence to support his copyright infringement claim on the merits. The unrebutted testimony and evidence from Booker T. Huffman and the creators of the G.I. Bro image shows that the work is an unoriginal copy of The Rock from the neck down, and at most the "facial expression" or "attitude" is claimed to be unique. But a facial expression is not copyrightable. Nor is an "attitude." Furthermore, Plaintiff presented ***no*** evidence of access, and he and the creators of G.I. Bro universally agreed that the images were different in many, significant ways that preclude a finding of striking similarity.

Further, Plaintiff has failed to present any evidence of damages. Plaintiff seeks only infringer's profits on his copyright claim. However, as even his own jury instruction and attorney voir dire questioning acknowledge, it is Plaintiff's burden to prove revenues attributable to that infringement to recover any infringer's profits. Plaintiff has adduced no evidence whatsoever that any amount of Activision's revenues are related to the alleged infringement of his G.I. Bro poster, and he has presented no expert testimony of any kind. Without any evidence to meet its burden, the jury has no basis to award any infringer's profits to Plaintiff. Since that is the only type of damages he seeks for his copyright claim, and since damages is an element of the claim, that claim should be dismissed from this lawsuit as a matter of law. *MGE UPS Systems, Inc. v. GE Consumer and Indus., Inc.*, 622 F.3d 361, 369 (5th Cir. 2010) (reversing denial of Rule 50(a) motion on copyright claim because plaintiff failed to prove damages, including infringer's profits, at trial).

Finally, Plaintiff has presented no evidence supporting his 17 U.S.C. section 1202 claim. This claim should also be dismissed under Rule 50(a).

## II. LEGAL STANDARDS

### A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a)(1). In other words, the moving party is entitled to judgment as a matter of law if "no reasonable juror could return a contrary verdict." *International Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).

To survive a Rule 50 motion and present a question for the jury, the party opposing the motion must establish a conflict in substantial evidence on each essential element of its claim. *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc) (holding that a mere scintilla of evidence is insufficient to present a question for the jury)). The evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture. *Id.* at 583 (citing *Gulf Coast Real Estate Auction Co. v. Chevron Indus., Inc.*, 665 F.2d 574, 577 (5th Cir. 1982)).

### B. Copyright Infringement

"To prove copyright infringement, a plaintiff must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (citation omitted). "The second prong, factual copying, can be proved by direct or circumstantial evidence." *Id.* Plaintiff has no direct evidence of factual copying.

To establish copying by circumstantial evidence requires proof that "(1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." *Id.* (citations omitted). "To establish access, a plaintiff must prove that 'the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work' before creating the infringing work." *Id.*

2

at 152-53 (quoting *Peel & Co. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001)). " 'A bare possibility will not suffice; neither will a finding of access based on speculation or conjecture.' " *Id.* at 153 (quoting *Peel*, 238 F.3d at 394-95). "Reasoning that amounts to nothing more than a 'tortuous chain of hypothetical transmittals' is insufficient to infer access." *Id.* (citations omitted).

In the absence of evidence of access, "factual copying may be proved by showing such a 'striking similarity' between the two works that the similarity could only be explained by actual copying." *Armour*, 512 F.3d at 152 n.3 (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 371 n.10 (5th Cir. 2004)). The similarity must be "of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source. *Id.* (quoting *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984)). Striking similarity must "preclude the ***possibility*** of independent creation." *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978) (emphasis added); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) ("A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole ***does not preclude any reasonable possibility*** of independent creation.") (emphasis added).

### C.     Damages Under 17 U.S.C. § 504

Under the Copyright Act, a copyright owner may seek several types of damages for infringement: statutory damages; actual damages (lost profits or damages reflecting the diminished value of the copyright); infringer's profits; or actual damages and infringer's profits, to the extent infringer's profits "are not taken into account in computing the actual damages." 17 U.S.C. §§ 504(a), (b). Courts apply a two-step analysis when assessing whether a copyright owner is entitled to infringer's profits and the amount to which he is entitled. *William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009). First, a court must examine whether

3

the plaintiff has met his burden to show a nexus, causal relationship, or "reasonable relationship" between the infringer's gross revenue and the infringement. *Leland Med. Ctrs., Inc. v. Weiss*, No. 4:07CV67, 2007 WL 2900599, at *1 (E.D. Tex. Sept. 28, 2007) (failure to require causal link is nothing more than "pie in the sky" damage model) (citing *Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001)); *see Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 188 (5th Cir. 1988) (affirming district court ruling that plaintiff's expert testimony was inadequate to attribute profits to infringement). If the court concludes the plaintiff has met his burden, the burden shifts to the infringer to offset the gross revenue by proving (i) expenses incurred that may be deducted from the gross revenue and (ii) elements of the infringer's profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b); *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) (collecting cases from multiple circuits); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 104, 107-08 (2d Cir. 1999). As discussed below, the analysis here never reaches this step because Plaintiff comes nowhere near meeting his burden on the first step.

      This two-step analysis applies to circumstances where a copyright holder is seeking direct or indirect profits. *Mackie*, 296 F.3d at 914. Direct profits constitute proceeds from the sale of an infringing article, while indirect profits constitute proceeds resulting in some specified way from the infringement. *Id.* To survive a judgment as a matter of law, Plaintiff must introduce enough evidence of causation between the infringement and defendants' profits to allow a jury to return a reasonable verdict. *See Mackie*, 296 F.3d at 911; *MGE UPS*, 622 F.3d at 368 ("'[W]hen one of the *prima facie* elements of a claim is damages and the claimant fails to introduce evidence of those damages, he or she commits a fatal error'" and holding "district court erred in denying GE/PMI's Rule 50(a) motion on MGE's copyright infringement claims because MGE has not shown damages under § 504(b)") (quoting *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649,

652 (5th Cir. 1994)).

### D. Provision of False Copyright Management Information ("CMI") Under 17 § 1202(a).

The DMCA prohibits the provision or distribution of false CMI, where a party knows the CMI is false and where that party disseminated the CMI with the intent to "induce, enable, facilitate, or conceal" copyright infringement. 17 U.S.C. § 1202(a).

### III. DISCUSSION

#### A. Plaintiff Has Failed to Show Copyright Infringement.

##### 1. Plaintiff's Work Is Copied from an Image of The Rock and Is Unoriginal and Uncopyrightable.

A work must be original to be copyrightable. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). This means the work must be ***independently created*** and that it possesses at least some ***minimal degree of creativity.*** *Id.*

The undisputed testimony shows that nothing about Plaintiff's work from the neck down was original in comparison to the image of The Rock, and in fact, the bodies of the two works are strikingly similar. Ex. 1 (Day 1 Trial Tr.) 240:17-18 ("Q. But you do admit that from the neck down these are strikingly similar, wouldn't you sir? A. Yes"); Ex. 2 (Day 2 Trial Tr.) 405:20-22 ("It's strikingly similar—strikingly similar, isn't it? A. Yeah, it's similar."). Copyright does not extend to non-original elements of the work.

Once everything from the neck down is removed, all that is left of Plaintiff's work is what Plaintiff described as his "facial expression," Ex. 2 314:18-19, or his "attitude," Ex. 1 186:12-16. One cannot obtain a copyright in an attitude. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994) ("copyright law protects tangible, original expressions of ideas, not ideas themselves."). Plaintiff does not own the idea of an angry man with a scowling look. Plaintiff's claim to a copyright over "facial expression" or "attitude" is not

permissible and should be rejected.

### 2. Plaintiff Presented No Evidence of Access.

Plaintiff's case had no direct evidence of access. He admitted freely this deficiency.

> Q. You have no facts to support your claim that we copied anything from you, do you sir, yes or no?
>
> A. I have no – nothing that I can show the jury and say, here is what, you know
>
> Q. That's right.
>
> A. – they did at Activision. I can't say that.
>
> Q. And you have no witness coming to this Court to get on that witness stand and testify that they have evidence that Activision copied anything from you, do you?
>
> A. I don't – no, I do not.

Ex. 2 290:8-13.

His purported circumstantial evidence of access was also woefully insufficient to support his claim of copying. Plaintiff testified that he was at a number of comic cons, and Activision was at a number of comic cons. But none of these comic cons overlapped except one: the 2015 San Diego Comic Con, which occurred *before* the Arroza poster was created. *See* Ex. 2 296:24-297:11. Plaintiff admitted on the stand that the Arroza poster was not at the 2015 San Diego Comic Con because it did not exist. *Id.* So Activision could not have gained access to the poster at that Comic Con. Plaintiff presented no other theory of access.

Plaintiff has simply adduced no facts to allow a reasonable jury to determine that Defendants had access to his work. This leaves him to argue striking similarity alone, but the evidence forecloses that avenue as well.

### 3. Plaintiff and His Witnesses Readily Testified to Sufficient Differences Between the Images Such That No Jury Could Find Them Strikingly

6

**Similar.**

Plaintiff and the creators of the Arroza poster all agreed that there were many more differences than similarities between the two images at issue. They pointed to key differences in pose, clothing, gear, weapons, arm angle, leg positioning, and portions of the background imagery. Ex. 2 324:20-325:14.; Ex. 3 (Yarbrough Dep. Tr.) 60:10-61:09; 61:10-61:21; Ex. 4 (West Dep. Tr.) 55:23-57:22; 72:23-60:17. The similarities identified boiled down to a simple, but generic, theme: a black man with dreadlocks and a headband. But Plaintiff admitted he didn't have a copyright on an image of a black man with dreadlocks and a headband. Ex. 2 284:19-24. Nor could he. There simply are not sufficient similarities between the two images to support a claim of striking similarity, which requires the images to be so similar that no other explanation but copying could explain the similarities—not coincidence, not independent creation, and not prior common source. *Armour*, 512 F.3d at 152 n.3. Those similarities that do exist here—two black men with dreadlocks—are common, public domain elements that cannot support a claim of striking similarity.

**B.     Plaintiff Has Failed to Show Infringer's Profits Attributable to the Alleged Infringement.**

Plaintiff seeks only infringer's profits. Proposed Verdict Form at 1-2, ECF No. 212-1. Accordingly, he has the initial burden to demonstrate that there is a causal connection between gross revenue from sales of the *Black Ops 4* game and the alleged infringement. *Davis*, 246 F.3d at 160. Plaintiff has failed to meet his burden. Plaintiff has presented no evidence that any portion of the revenue from sales of *Black Ops 4* is connected to the alleged infringement.

In voir dire, Plaintiff's attorney reiterated multiple times that the correct test is profits ***attributable*** to the infringement. Ex. 1 51:12-16 ("if the Defendant infringes and makes a profit based on what they did, that profit--they're accountable for that profit to the Plaintiff and ***they***

7

*must return the part of the profit that's attributable to the Plaintiff's creative works back to the Plaintiff.*"); 53:24-54:2 ("that's not going to prevent you from looking at the facts of this case and *deciding what the profits are and what profits are attributable to the infringement of Mr. Huffman's work.*") (emphases added). He also conceded that it is the Plaintiff's burden to present evidence on this issue. 52:12-14, 18-21. In his proposed jury instructions, Plaintiff also reiterates his burden. Proposed Jury Insts. at pdf p. 43, ECF No. 213 ("A plaintiff is entitled to recover the profits of an infringer that are *attributable to the infringement*."; "[i]n a copyright infringement action, the copyright owner must only prove the gross revenues that the infringer has earned from the creation, sales, or rentals *of the infringing item.*") (emphases added).

No evidence in the record supports a finding that the Prophet/Romeo Image motivated consumers to purchase *Black Ops 4* or contributed in any way to sales of the game. In fact, Plaintiff did not call a damages expert—or indeed any expert—to analyze this issue in this case. Nor did Plaintiff induce any specific testimony detailing what any revenue from *Black Ops 4* even was, much less that any of the revenue was attributable to the Prophet/Romeo Image. Stated simply, Plaintiff has proffered no evidence whatsoever demonstrating that the Prophet/Romeo Image resulted in a single sale of *Black Ops 4*. Plaintiff has not even mustered an attempt.

*MGE* is directly on point. There, the Fifth Circuit reversed a district court who denied a Rule 50(a) motion because plaintiff failed to prove up its damages on a copyright claim. *MGE*, 622 F.3d at 369. In particular, the court held that "MGE needed to present a more narrowly tailored calculation of PMI's profits in order to cognize a claim for copyright damages 'attributable to the infringement.'" *Id.* MGE "sought over $100 million in damages based almost exclusively on the testimony of its only damages expert, Dr. Laurance Prescott." *Id.* at 367.

8

"Notably, Dr. Prescott did not testify to GE/PMI's profits attributable to the infringement." *Id.* The court struck this testimony for being unsupported. *Id.* Once stricken, MGE had only a "bar graph indicating PMI's total revenue from 2001 to 2004" as evidence of profits. *Id.* at 368. The Fifth Circuit held this was insufficient, because evidence showed only 10% of revenue came from MGE-branded machines, and "PMI's total revenue far exceeds the approximately 10% of revenue reasonably related to the infringement of MGE's copyright." *Id.* at 369. The Fifth Circuit therefore held that Plaintiff failed to present a damages case, and "[a]ccordingly, the district court erred in denying GE/PMI's Rule 50(a) motion on MGE's copyright infringement claims because MGE has not shown damages under § 504(b))." *Id.*

*MGE* is determinative of the outcome here, and in fact, the facts here are worse for Plaintiff. Like *MGE*, Plaintiff has no expert to present a profits theory that is reasonably attributable to infringement. Unlike *MGE*, Plaintiff has not even ***attempted*** to present a damages expert to opine on profits attributable to infringement. These fatal flaws in Plaintiff's case mandate, under binding Fifth Circuit precedent, that Plaintiff's copyright claim be dismissed under Rule 50(a).

This is consistent with other precedent. In *Mackie*, an artist sued the Seattle Symphony for copyright infringement based on the unauthorized use of a photograph of the artist's copyrighted public sculpture. 296 F.3d at 912-13. The Symphony used the infringing photograph on one page of a twenty-four-page promotional brochure it circulated to drum up season tickets sales. *Id.* at 912. The plaintiff sought infringer's profits pegged to the symphony's revenue from a particular music series that was described in the brochure alongside the infringed artwork. *Id.* at 913. The plaintiff's expert testified that it was "impossible" to determine how much of the Symphony's revenue was due to the infringement but later changed

9

course, opining by declaration that, as the Symphony hoped to get a return rate of 1.5% from the brochures, the plaintiff was entitled to 1.5 % of the Symphony's revenue. *Id.*

The court ruled this evidence too "speculative" to support an award for infringer's profits. *Id.* at 916. It opined that "myriad factors" could influence a decision to purchase tickets, including "reasons that have nothing to do with the artwork in question" such as the reputation of the symphony, notoriety of the conductor or a specific musician, patrons' love of music, interest in the new symphony hall, or even the dates of the available concerts: "In the absence of concrete evidence," the plaintiff's theory was "no less speculative than our effort . . . to enumerate even a relatively short list of the myriad factors that could influence an individual's purchasing decisions." *Id.* The court further disapproved of the expert's application of the expected 1.5% return rate to the Symphony's revenue, describing it as a "virtual non-sequitur:"

> Even if such an aspirational yield percentage could be applied to determine how many people subscribed because of the brochure, such a rudimentary analysis cannot determine how many of those individuals subscribed *because of Rieser's work*. The thread is even more attenuated because the artwork was but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself. Rank speculation of that sort will not allow a copyright holder to survive a summary judgment motion on his claim for indirect profits.

*Id.*

Again, the facts in *Mackie* that were held to be insufficient to support a damages award exceed those presented by Plaintiff here. The Romeo Image, just like the accused image in *Mackie*, made up only a small component of the marketing materials disseminated to the public. Neither the plaintiff in *Mackie* nor Plaintiff here presented any evidence that any consumers purchased the advertised goods specifically as a result of the allegedly infringing component within the marketing material. And here, Plaintiff has not even offered "rank speculation" of the percentage of *Black Ops 4* revenue to which he claims he is entitled under a theory of infringer's

10

profits. He has failed to even present a number.

*Mackie* is not an outlier. The Fifth Circuit has similarly upheld a ruling from the Eastern District of Texas that a plaintiff must present evidence as to how much of the profits at issue are attributable to the infringing work in order to obtain an infringer's profits. In *Estate of Vane*, the plaintiff, a photographer, sued a department store for using his photographs in television advertisements when the store only had a license to use the photographs in mailers to customers. 849 F.2d at 187. The accused commercials, however, contained multiple images, not only the plaintiff's. *Id.* Nonetheless, the plaintiff's expert calculated a lump-sum figure based off the department store's profits attributable to the commercials without accounting for the fact that the infringed photographs made up "only a fraction of any given commercial." *Id.* at 188. The expert's model purported to consider "seasonal [holidays-based] sales trends," the trajectory of the local economy during the relevant time period, and the so-called "carryover effect" which describes an advertisement's lingering contribution to sales after its initial airing. *Id.*

Even so, the Fifth Circuit affirmed the district court's decision to decline to award infringer's profits because the evidence was too speculative—in part because the expert did not connect sales to the infringing images. *Id.* The court noted that the infringed images appeared during "only part of the time the commercials were on the air." *Id.* at 188-89 (noting part of the commercial was comprised of introductory and closing segments and part of the commercial featured merchandise depicted by non-infringing images). The court concluded: "Some portion of the profits may have been attributable to the infringement, but much of the profits must be attributed to non[-]infringing aspects of the commercials." *Id.* at 188. As in *Mackie*, the evidence presented in *Estate of Vane* was far more than Plaintiff has presented here, yet the Fifth Circuit still deemed the evidence insufficient to permit a recovery of infringer's profits.

11

Other courts have consistently required plaintiffs to demonstrate a connection not just between infringing materials and the infringer's profits—but between *the infringing component of the material* and the infringer's revenue. *See, e.g.*, *Straus v. DVC Worldwide*, 484 F. Supp. 2d 620, 646-48 (S.D. Tex. 2007) (granting summary judgment on indirect profits and holding no causal link where no evidentiary basis "to conclude how much any particular marketing materials contributed to the sales figures, much less to distinguish between the effect of using materials that included unauthorized uses of [the plaintiff's] photograph as opposed to authorized uses of the photograph."); *Rally Concepts, LLC v. Republican Nat'l Comm.*, No. 5:05-CV-41-DF, 2006 WL 6889673, at *2 (E.D. Tex. Nov. 9, 2006) ("Showing the total revenue of a defendant accused of copyright infringement is generally not sufficient. Instead, the term 'gross revenue' under the statute [17 U.S.C. § 504(b)] means gross revenue reasonably related to the infringement, not unrelated revenues.") (internal quotation marks omitted) (citation omitted); *O'Connor v. Cindy Gerke & Assocs., Inc.*, 300 F. Supp. 2d 759, 773-74 (W.D. Wis. 2002) (finding no nexus as a matter of law where plaintiff did not submit evidence of profits related to infringing components in marketing material).

Plaintiff must show a non-speculative relationship between the specific accused image and *Black Ops 4* revenue. *See Estate of Vane*, 849 F.2d at 188; *Mackie*, 296 F.3d at 916. It is insufficient, as a matter of law, for Plaintiff to rely on generalities, particularly where he has no expert opinion—or even lay testimony—as to what impact, if any, the Prophet/Romeo Image had on sales of *Black Ops 4*. *See, e.g.*, *Leland Med. Ctrs., Inc.*, 2007 WL 2900599, at *1 (failure to show causality "pie in the sky") (citing *Polar Bear Prods.*, 384 F.3d at 714). Here, where Plaintiff has failed to adduce revenue attributable to the infringement, Plaintiff has not met his burden, and his claim must be dismissed.

### C.   Plaintiff Has Failed to Provide Any Evidence of False Copyright Management Information.

The DMCA prohibits the provision or distribution of false CMI, where a party knows the CMI is false and where that party disseminated the CMI with the intent to "induce, enable, facilitate, or conceal" copyright infringement. 17 U.S.C. § 1202(a).

Plaintiff has presented no evidence that Defendants distributed any CMI in connection with the Prophet image, much less false CMI. Indeed, there is no evidence in the record regarding CMI attached to the Romeo image. Plaintiff introduced only Exhibit 51 to provide evidence of CMI. This exhibit is simply a picture of a game disc and other clipped copyright symbols without any testimony or evidence that this game disc was ever distributed with the Romeo image. Without any evidence of CMI being distributed or provided with the Romeo image, there can be no evidence that the CMI is false. Furthermore, Plaintiff elicited no testimony to meet his burden of providing the "double scienter" required to show a violation of section 1202(a): No evidence that anyone at Defendants' companies knew that any CMI is false, or that any CMI was distributed with the intent to "induce, enable, facilitate, or conceal copyright infringement." Plaintiff has simply failed to provide the most basic evidence required to meet his burden on his Section 1202(a) claim.

For that reason, Plaintiff's claim for a violation of section 1202(a) should be dismissed under Rule 50(a) as well.

## IV. CONCLUSION

For all the reasons herein, Defendants respectfully request this Court grant their motion for judgment as a matter of law.

Dated: June 23, 2021                 DURIE TANGRI LLP

By: */s/ Andrew Esbenshade*
DARALYN J. DURIE (CA SBN 169825)
ddurie@durietangri.com
ANDREW ESBENSHADE (CA SBN 202301)
aesbenshade@durietangri.com
JOSEPH C. GRATZ (CA SBN 240676)
jgratz@durietangri.com
JESSICA E. LANIER (SBN 303395)
jlanier@durietangri.com
AARON J. BENMARK (CA SBN 312880)
Telephone: 415-362-6666
Facsimile: 415-236-6300

MELISSA R. SMITH (TX SBN 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

E. LEON CARTER (TX SBN 03914300)
lcarter@carterarnett.com
COURTNEY B. PEREZ (TX SBN 24061135)
cperez@carterarnett.com
CARTER ARNETT PLLC
8150 N. Central Expressway, Suite 500
Dallas, TX 75206
Telephone: 214-550-8188
Facsimile: 214-550-8185

Attorneys for Defendants
ACTIVISION PUBLISHING, INC., ACTIVISION
BLIZZARD, INC., MAJOR LEAGUE GAMING
CORP., and TREYARCH CORPORATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2021 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Melissa R. Smith*
MELISSA R. SMITH